UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

SAMUEL L. JONES JR.,

       **Plaintiff,**

  -against-

INFINITY BROADCASTING CORPORATION
OF WASHINGTON, D.C. n/k/a CBS RADIO
INC. OF WASHINGTON, D.C.,

     **Defendant.**

--------------------------------------------------------------x

JUDGE JONES

**07 CIV 5693**

Civil Action No.

<u>COMPLAINT</u>



RECEIVED
JUN 1 4 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, Samuel L. Jones Jr. (hereinafter "plaintiff" or "Jones"), by his attorneys, Lebensfeld Borker Sussman & Sharon LLP, for his complaint against defendant, Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D.C. (hereinafter "defendant" or "Infinity"), respectfully alleges as follows:

<u>Nature of the Action</u>

1.    This is a civil action by Jones, an entertainer and radio personality who created and uses the name and character "Huggy Lowdown" in his performances, (i) to declare that Jones was legally entitled to sever his relationship with Infinity and terminate the latter's associated license to use the Huggy Lowdown name and character and, as necessary and related relief, (ii) to enjoin Infinity from enforcing its alleged exclusive right to utilize the Huggy Lowdown name and character, as set forth in a terminated license agreement between the parties.

**Jurisdiction and Venue**

2.      The Court has jurisdiction under the provisions of 28 U.S.C. § 1332 because the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000 and is between citizens of different states.

3.      Venue is proper in this District under the provisions of 28 U.S.C. § 1391(a)(1) and (c) inasmuch as defendant resides, and is subject to personal jurisdiction, in this District.

**The Parties**

4.      Plaintiff, a natural person, resides at 743 Fairmont Street, N.W., #206, Washington, D.C. and is a citizen and resident of the District of Columbia.

5.      Upon information and belief, defendant is a Delaware corporation which maintains an office and principal place of business at 1515 Broadway, New York, New York, and, is a citizen of the States of Delaware and New York.

6.      Jones is an entertainer, primarily a comedian who has achieved a recognized degree of popularity in the Washington, D.C. urban area.  Since some time in or about September 1999, Jones has created a character known as "Huggy Lowdown" that thereafter has been used by Jones in personal appearances at various venues such as comedy clubs in the Washington, D.C. metropolitan area.

7.      Upon information and belief, since some time in or about the year 2000, Jones, as the "Huggy Lowdown" character, has called into the Donnie Simpson Morning show, a radio show program popular in the Washington, D.C. urban area on WPGC-FM, a station owned by defendant, and, as such character, has offered various comments and "insights" into the events of the day.

**The License Agreement**

      8.    Approximately five years after Jones first appeared on the Donnie Simpson Morning Show as a "call-in" guest, Jones and Infinity entered into a license agreement ("License Agreement"), to which reference is made for the full contents thereof.

      9.    The License Agreement recites that it was "entered into this 26th day of May 2005" by and between Jones and Infinity.  The License Agreement was signed by Jones and by Infinity, the latter acting through Sam Rogers, the "VP/GM" of WBGC.

      10.    Pursuant to the provisions of the License Agreement, Infinity was given the royalty-free, exclusive, right to use the "Trademark" on radio in the Washington, D.C. Total Survey Area (as defined therein).  The Trademark is defined in the License Agreement as the application filed by Jones with the United States Trademark and Patent Office for the trademark HUGGY LOWDOWN "for entertainment services, namely comedy performances, broadcast over satellite radio and broadcast radio; [and] stand up comedy in front of live audiences."

      11.    Pursuant to the License Agreement, paragraph 3 thereof, the term of such license "shall commence on the date set forth above and shall terminate one (1) year following the date of the termination of the licensor's personal services contract with WPGC-FM."

      12.    The License Agreement further provides, in paragraph 10, that "[u]pon termination of this Agreement for any reason whatsoever, all rights in the Trademark will immediately and automatically revert to Licensor [Jones]."

      13.    The License Agreement provides that it will be governed by the internal laws of New York.

**The Draft Personal Services Agreement**

14.     Some time in the year 2005, Jones was presented by Infinity with a draft "personal service contract" in the form of an undated, incomplete letter agreement, on "blank letterhead," addressed to and prepared for Jones' countersignature.

15.     The draft personal services contract provides for call-ins of "appx. 5 min. length to the Donnie Simpson Morning show" fives times a week.

16.     Paragraph 4 of the draft personal services contract provides that Contractor [Jones] ("during the Term") "will not appear by voice, picture or likeness on any other radio station within the Washington DC market."

17.     The Term, in paragraph 2 of the draft personal services contract, recites that it "shall commence on the date of signing this agreement and shall continue for one (1) additional year provided Station informs Contractor [Jones] in writing at least 30 days prior [to] the one (1) year expiration date of this Agreement." *Emphasis added.*

18.     The draft personal services contract was not signed.

**The April 27 Renewal Notice**

19.     By letter dated April 27, 2006 ("April 27 Renewal Notice"), Infinity "advised [Jones] that pursuant to your agreement with Infinity Broadcasting Corporation of Maryland [sic], dated May 26, 2006[sic] notice is hereby given that WPGC desires to continue to utilize your services after the expiration of your present agreement. This serves as notice we are exercising the option extending the terms of your agreement for another year."

20.     The License Agreement is with Infinity Broadcasting Corporation of Washington, D.C., not Maryland. The draft personal services contract is not dated.

21.    Even if, contrary to fact, the draft personal services contract had been completed, dated and signed, or otherwise were ruled to be valid, the April 27 Renewal Notice, not having been given "at least 30 days prior [to] the one (1) year expiration date of this [personal services] Agreement," is untimely on its face and, thus, ineffective to have extended the term thereof.

**Recent Events**

22.    On June 8, 2007, Jones made his last appearance on the Donnie Simpson Morning Show; and on June 11, 2007, Infinity made a public announcement that Jones would no longer appear on its station.

23.    On June 11, 2007, Jones entered into a written contract with Radio One, Inc. ("Radio One") pursuant to which Jones is to provide services to Radio One (the "Radio One Contract"), which will include call-ins by Jones to Radio One's syndicated radio program, during which Jones will appear as the Huggy Lowdown character.

24.    Upon information and belief, Infinity espouses the position that Jones, pursuant to the provisions of the License Agreement, is prohibited from utilizing the Huggy Lowdown character on Radio One.

## Count I

### (Declaratory Judgment)

25.    Jones repeats and realleges paragraphs 1 through 24 as though fully set forth herein.

26.    Jones contends he was an at will consultant to Infinity and, as such, free to terminate forthwith his relationship with Infinity.

27.    Jones further contends, inasmuch as the draft personal services contract was neither completed nor signed, that he is contractually free to terminate Infinity's license to use the Huggy Lowdown character.

28.    Finally, Jones contends that even if, contrary to fact, the draft personal services contract had been completed, dated and signed or were otherwise deemed valid, inasmuch as the purported renewal notice of such undated contract, recited as being dated May 26, 200[5], not having been given "at least 30 days prior [to] the one (1) year expiration date of this [personal services] agreement," was untimely on its face, in consequence of which the personal services contract, were it not deemed void *ab initio*, would have expired by its terms on or prior to May 25, 2006.

29.    Upon information and belief, Infinity contends that, notwithstanding that the draft personal services contract was incomplete and unsigned, such personal services contract nonetheless was in full force and effect and, further, that the April 27 Renewal Notice, albeit less than 30 days prior to the expiration date of the personal services contract (as recited in the April 27 Renewal Notice), nonetheless was effective to extend the term of such personal services contract through and including May 25, 2007.

30.    Upon information and belief, Infinity thus contends that Infinity has the exclusive right to use of the Huggy Lowdown name and character through May 25, 2008.

31.    An actual and justiciable controversy exists between Jones and Infinity concerning Jones' ability to utilize forthwith the Huggy Lowdown name and character.

32.    Jones has no adequate remedy at law.

**WHEREFORE**, Jones demands judgment against Infinity as follows:

(a)     That the Court determine and declare that (i) the draft, incomplete and unsigned personal services contract was invalid *ab initio*, (ii) Jones is legally entitled to terminate forthwith Infinity's license to use the Huggy Lowdown name and character, or, *alternatively*, (iii) in the event the personal services contract was deemed valid *ab initio*, then, in such event, by reason of the untimely notice of Infinity's right of renewal, the "personal services contract" expired by its terms on or prior to May 25, 2006 in consequence of which the License Agreement expired on or prior to May 25, 2007.

(b)     That Infinity, its agents, servants, employees and all persons acting in concert or participation with it, or holding by, through or under it, or acting under the authority of or in privy with it, and each and all of them, be enjoined and restrained, at first, preliminarily, during the pendency of this action and thereafter permanently, from enforcing the exclusive right to utilize the Huggy Lowdown name and character in the License Agreement;

(c)     Its costs and disbursements of this action; and

(d)     Such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
      June 14, 2007

                          **LEBENSFELD BORKER SUSSMAN &**
                          **SHARON LLP**

By: _____
                         Stephen Sussman (SS-1072)
                        Two Penn Plaza, Suite 1980
                        New York, New York 10121
                        (212) 594-2030