**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

SAMUEL L. JONES JR.,

                **Plaintiff,**

    -against-

INFINITY BROADCASTING CORPORATION
OF WASHINGTON, D.C. n/k/a CBS RADIO
INC. OF WASHINGTON, D.C.,

                **Defendant.**

--------------------------------------------------------------x

**07 CIV 5693 (BSJ) (AJP)**

**AMENDED COMPLAINT**



JUL 16 2007

U.S.D.C. S.D. N.Y.
CASHIERS

       Plaintiff, Samuel L. Jones Jr. (hereinafter "plaintiff" or "Jones"), by his attorneys, Lebensfeld Borker Sussman & Sharon LLP, for his amended complaint against defendant, Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D.C. (hereinafter "defendant" or "Infinity"), respectfully alleges as follows:

### Nature of the Action

       1.     This is a civil action by Jones, an entertainer and radio personality who created and uses the name and character "Huggy Lowdown" in his performances, (i) to declare that Jones was legally entitled to sever his relationship with Infinity and terminate the latter's associated license to use the Huggy Lowdown name and character and, as necessary and related relief, (ii) to enjoin Infinity from enforcing its alleged exclusive right to utilize the Huggy Lowdown name and character, as set forth in an expired license agreement between the parties.

### Jurisdiction and Venue

2.      The Court has jurisdiction under the provisions of 28 U.S.C. § 1332 because the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000 and is between citizens of different states.

3.      Venue is proper in this District under the provisions of 28 U.S.C. § 1391(a)(1) and (c) inasmuch as defendant resides, and is subject to personal jurisdiction, in this District.

### The Parties

4.      Plaintiff, a natural person, resides at 743 Fairmont Street, N.W., #206, Washington, D.C. and is a citizen and resident of the District of Columbia.

5.      Upon information and belief, defendant is a Delaware corporation which maintains an office and principal place of business at 1515 Broadway, New York, New York, and, is a citizen of the States of Delaware and New York.

6.      Jones is an entertainer, primarily a comedian who has achieved popularity in the Washington, D.C. urban area.  Some time in or about September 1999, Jones created a character known as "Huggy Lowdown."  Huggy Lowdown (or "Huggy") is a "street" character who offers "comments" and "insights" on current events and politics.  The comments are made in what may be considered street -- or irreverent -- language.

7.      In addition to use of the Huggy Lowdown character in personal appearances at various venues such as comedy clubs, since some time in or about the year 2000, Jones, as the "Huggy Lowdown" character, has called into the <u>Donnie Simpson Morning Show</u>, a radio show program popular in the Washington, D.C. urban area on WPGC-FM ("WPGC"), a

station owned by defendant, and, as such character, has offered various comments and "insights" into current events and politics.

**The License Agreement**

8.    Approximately five years after Jones first appeared on the <u>Donnie Simpson Morning Show</u> as a "call-in" guest, Jones and Infinity entered into a license agreement ("License Agreement"), to which reference is made for the full contents thereof.

9.    The License Agreement recites that it was "entered into this 26th day of May 2005" by and between Jones and Infinity. The License Agreement was signed by Jones and by Infinity, the latter acting through Sam Rogers, the "VP/GM" of WBGC.

10.    Pursuant to the provisions of the License Agreement, Infinity was given the royalty-free, exclusive, right to use the "Trademark" on radio in the Washington, D.C. Total Survey Area (as defined therein). The Trademark is defined in the License Agreement as the application filed by Jones with the United States Trademark and Patent Office for the trademark HUGGY LOWDOWN "for entertainment services, namely comedy performances, broadcast over satellite radio and broadcast radio; [and] stand up comedy in front of live audiences."

11.    Pursuant to the License Agreement, paragraph 3 thereof, the term of such license "shall commence on the date set forth above and shall terminate one (1) year following the date of the termination of the licensor's personal services contract with WPGC-FM."

12.    The License Agreement further provides, in paragraph 10, that "[u]pon termination of this Agreement for any reason whatsoever, all rights in the Trademark will immediately and automatically revert to Licensor [Jones]."

13.    The License Agreement provides that it will be governed by the internal laws of New York.

**The Personal Services Agreement**

14.    Some time in the year 2005, Jones was presented by Infinity with a draft "personal service contract" in the form of an undated, incomplete letter agreement, on "blank letterhead," addressed to and prepared for Jones' countersignature.  Although Jones has no recollection of having signed such draft personal services contract, since the date of filing of the original complaint herein, Infinity has presented Jones with a copy thereof which contains the countersignature of Jones and the date of "5-26-05."

15.    The personal services contract provides for call-ins by Jones of "appx. 5 min. length to the Donnie Simpson Morning show" fives times a week.

16.    Paragraph 4 of the personal services contract provides that Contractor [Jones] ("during the Term") "will not appear by voice, picture or likeness on any other radio station within the Washington DC market."

17.    The Term, in paragraph 2 of the personal services contract, recites that it "shall commence on the date of signing this agreement and shall continue for one (1) additional year provided Station informs Contractor [Jones] in writing at least 30 days prior [to] the one (1) year expiration date of this Agreement."

**The Untimely April 27 Renewal Notice**

18.    By letter dated April 27, 2006 ("April 27 Renewal Notice"), Infinity "advised [Jones] that pursuant to your agreement with Infinity Broadcasting Corporation of Maryland, dated May 26, 2006 [sic] notice is hereby given that WPGC desires to continue to utilize your services after the expiration of your present agreement.  This serves as notice we are exercising the option extending the terms of your agreement for another year."

19.     Regardless of the validity of the personal services contract, the April 27 Renewal Notice, not having been given "at least 30 days prior [to] the one (1) year expiration date of this [personal services] Agreement," is untimely on its face and, thus, ineffective to have extended the term thereof.

**Recent Events**

20.     On June 8, 2007, Jones made his last appearance on the <u>Donnie Simpson Morning Show</u>;  and, on June 11, 2007, Infinity made a public announcement that Jones would no longer appear on its station.

21.     On June 11, 2007, Jones entered into a written contract with Radio One, Inc. ("Radio One"), a competitor of Infinity's, pursuant to which Jones is to provide services to Radio One (the "Radio One Contract"), which will include call-ins by Jones to Radio One's syndicated morning radio program, during which Jones will appear as the Huggy Lowdown character.

22.     Infinity espouses the position that Jones, pursuant to the provisions of the License Agreement, is prohibited from utilizing the Huggy Lowdown character on Radio One in the Washington, D.C. market area.

**Count I**

**(Declaratory Judgment)**

23.     Jones repeats and realleges paragraphs 1 through 22 as though fully set forth herein.

24.     Jones contends that, since at least commencing with the close of business on May 25, 2006, he was an at will consultant to Infinity and, as such, free to terminate forthwith his relationship with Infinity.

25.    Jones further contends that he is contractually free to terminate Infinity's license to use the Huggy Lowdown character.

26.    Finally, Jones contends that, not withstanding his countersignature of the personal services letter agreement, inasmuch as the purported renewal notice of such contract, dated April 27, 2006, not having been given "at least 30 days prior [to] the one (1) year expiration date of this [personal services] agreement," was untimely on its face, in consequence of which (i) the personal services contract would have expired by its terms on or prior to May 25, 2006 and (ii) the 1-year restrictive covenant in the License Agreement would have expired by its terms on or prior to May 25, 2007.

27.    Upon information and belief, Infinity contends that the April 27 Renewal Notice was effective to extend the term of such personal services contract through and including at least May 25, 2007.

28.    Upon information and belief, Infinity thus contends that Infinity has the exclusive right to use of the Huggy Lowdown name and character on radio in the Washington, D.C. Total Survey Area (as defined) through at least May 25, 2008.

29.    An actual and justiciable controversy exists between Jones and Infinity concerning Jones' ability to utilize forthwith the Huggy Lowdown name and character as aforesaid.

30.    Jones has no adequate remedy at law.

### Count II

### (Injunctive Relief)

31.    Jones repeats and realleges paragraphs 1 through 30 as though fully set forth herein

32.    Jones was born, raised and has lived almost all of his 38 years of age, in Washington, D.C.

33.    From time to time during the months prior to June 2007, Jones had discussions with WPGC officials about Jones' remaining at WPGC. During these discussions, Jones was told he was a valuable member of the WPGC team. Nevertheless, the highest dollar amount offered to Jones for his services was $45,000 (with $50,000 for the second year).

34.    The amount offered by WPGC to retain Jones' services was significantly less than the market value for Jones' services.

35.    In refusing to make a market (or near market) offer to Jones, Infinity representatives made reference to the 1-year post termination restriction in the use of the Huggy Lowdown character in the Washington, D.C. radio market.

36.    Under the provisions of the Radio One Contract, to which reference is made for the full contents thereof, Jones is obligated to appear as Huggy Lowdown on the <u>Tom Joyner Morning Show</u>, a syndicated radio program broadcast Monday through Friday between 6:00 a.m. and 10:00 a.m. Such appearances as Huggy Lowdown began on Monday, July 19.

37.    Under the Radio One Contract, Jones was paid a signing bonus -- although modest -- that was <u>more</u> than the highest annual compensation offered to Jones for Jones' continued service. Jones actual annual compensation from Radio One is <u>many</u> times the highest offer made to Jones by Defendant to persuade him to stay.

38.    If Jones cannot perform his obligations under his contract with Radio One, Jones may be forced to leave the only home Jones has ever known (and his 13-year-old daughter) in an effort to earn a living.

**WHEREFORE**, Jones demands judgment against Infinity as follows:

(a)      That the Court determine and declare that (i) Jones is legally entitled to terminate forthwith Infinity's license to use the Huggy Lowdown name and character, and, (ii) by reason of the untimely notice of Infinity's right of renewal, the "personal services contract" expired by its terms on or prior to May 25, 2006 in consequence of which the 1-year restriction on the use of the Huggy Lowdown mark on the radio in the Washington, D.C. total survey area, in the License Agreement, expired on or prior to May 25, 2007.

(b)      That Infinity, its agents, servants, employees and all persons acting in concert or participation with it, or holding by, through or under it, or acting under the authority of or in privy with it, and each and all of them, be enjoined and restrained, at first, preliminarily, during the pendency of this action and thereafter permanently, from enforcing the exclusive right to utilize the Huggy Lowdown name and character in the Washington, D.C. radio market, as set forth in the License Agreement;

(c)      Its costs and disbursements of this action; and

(d)      Such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
         July 16, 2007

                                        LEBENSFELD BORKER SUSSMAN &
                                        SHARON LLP

                                        By: _____
                                             Stephen Sussman (SS-1072)
                                        Two Penn Plaza, Suite 1980
                                        New York, New York 10121
                                        (212) 594-2030