Bruce P. Keller (BK-9300)  
Jeremy Feigelson (JF-4963)  
DEBEVOISE & PLIMPTON LLP  
919 Third Avenue  
New York, New York 10022  
(212) 909-6000  

ELECTRONICALLY FILED

*Attorneys for Defendant and Third-Party/Counterclaim-Plaintiff Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D.C.*

UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------------------x  

| | |
|---|---|
| SAMUEL L. JONES JR., | : |
| Plaintiff, | : No. 07 Civ. 5693 (BSJ) (AJP) |
| -against- | : |
| INFINITY BROADCASTING CORPORATION OF WASHINGTON, D.C. n/k/a CBS RADIO INC. OF WASHINGTON, D.C., | : **DECLARATION OF BRUCE P. KELLER** |
| | : **EXHIBIT 3, PART 1** |
| Defendant. | : |

------------------------------------------------------------------------x  

| | |
|---|---|
| INFINITY BROADCASTING CORPORATION OF WASHINGTON, D.C. n/k/a CBS RADIO INC. OF WASHINGTON, D.C., | : |
| Counterclaimant and Third-Party Plaintiff, | : |
| -against- | : |
| SAMUEL L. JONES JR., | : |
| Counterclaim Defendant, and | : |
| RADIO ONE, INC., | : |
| Third-Party Defendant. | x |

22525486v1

**EXHIBIT 3**

Employee: Samuel L. Jones Jr.
Employee Initials: _____

Vice President: Linda J. Vilardo
Vice President Initials: _____

## EMPLOYMENT AGREEMENT

THIS AGREEMENT ("Agreement") is made and entered into as of the 11th day of June, 2007 ("Effective Date"), by and between Radio One, Inc. ("Company" or "Radio One"), a Delaware corporation having its principal place of business at 5900 Princess Garden Parkway, Lanham, Maryland, and Samuel L. Jones Jr. ("Employee"), professionally known as "Huggy Lowdown" and "Huggy," an individual residing at 743 Fairmont Street, Apartment 206, Washington, D.C.

### RECITALS

WHEREAS, Company is engaged in the business of owning and managing broadcast media, directly and through subsidiaries and affiliates, including seventy (70) radio stations in twenty-two (22) markets in the United States; and

WHEREAS, Employee is the owner, holder and licensor of the trademark HUGGY LOWDOWN ("Huggy Lowdown Trademark") for entertainment services, including live comedy performances and comedy performances broadcast over radio and satellite radio; and

WHEREAS, Company desires to obtain a license to use the Huggy Lowdown Trademark in its Washington, D.C. radio market and on its nationally syndicated and other radio programs; and

WHEREAS, Company desires to hire Employee to perform such services as described below, in accordance with the terms of this Agreement; and

WHEREAS, Employee desires to be hired by Company, in accordance with the terms of this Agreement;

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants hereinafter set forth, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and Employee, intending to be legally bound, hereby agree as follows:

1. Employment. Company hereby employs Employee in the position of On-Air Talent and Writer.

2. Term and Right of First Refusal.

    (a) Term. Employee's employment under this Agreement shall commence on June 18, 2007 and shall continue in full force and effect for a period of two (2) years until June 17, 2009 ("Term"), unless earlier terminated by Company pursuant to the provisions of Section 10 hereof.

    (b) Right of First Refusal. The parties hereto agree that either of them may initiate a period of exclusive good faith negotiation to commence no earlier than ninety (90) days prior to the expiration date of the Term and terminate on the expiration date of the Term ("Exclusive Negotiation Period"), during which time the parties will

Employee: Samuel L. Jones Jr.
Employee Initials: ⎯⎯⎯⎯

Vice President: Linda J. Vilardo
Vice President Initials: ⎯⎯⎯⎯

engage in exclusive good faith negotiations for extending this Agreement on mutually agreeable terms and conditions. If either party initiates negotiations, Company agrees to provide Employee with the compensation terms that Company would be willing to pay to extend the Agreement for an additional period of time beyond the Term. If the parties are unable to reach agreement to extend this Agreement within the Exclusive Negotiation Period, notwithstanding their respective good faith efforts to do so, Employee thereafter shall be permitted to solicit and/or entertain offers from, and to negotiate with, third parties following the expiration of the Exclusive Negotiation Period, provided that Company shall have the right of first refusal to match any bona fide offer (including any substantial agreement as to the terms of an offer) for Employee's services received by or made to Employee within ninety (90) days after expiration of the Exclusive Negotiation Period ("Right of First Refusal Period"). Employee agrees that during the Right of First Refusal Period, Employee will not accept or agree to any offer or enter into any arrangement or agreement before notifying Company of all of the terms and conditions upon which such offer has been made within five (5) business days of receiving such offer and providing Company with an opportunity to match the compensation terms of such offer. Upon receipt of notification from Employee, Company shall have five (5) business days in which to elect to engage Employee's services upon at least the same terms offered by such other party. For purposes of this paragraph, "terms" shall mean the compensation terms of the other party's offer. If Company does not match any offers as to which Employee has duly notified Company, and Employee does not thereafter accept any of such offers, Company's right of first refusal shall apply to any subsequent offer received by or made to Employee during the Right of First Refusal Period.

3. <u>Duties</u>.

    3.1. During the Term of this Agreement, Employee hereby agrees to the following, without limitation:

        (a) Employee shall appear as a featured On-Air Talent on the *Tom Joyner Morning Show*, a syndicated radio program that is broadcast Monday through Friday, between the hours of 6:00 a.m. and 10:00 a.m. Employee's feature appearance shall be approximately two (2) to five (5) minutes in length and, except as otherwise determined by Company, typically shall be broadcast approximately five (5) times weekly in the Washington, D.C. radio market and approximately three (3) times weekly in all other markets in which the *Tom Joyner Morning Show* is broadcast. Notwithstanding the foregoing, material changes in the length and frequency of Employee's feature appearances on the *Tom Joyner Morning Show* shall be as mutually agreed upon by the parties hereto.

        (b) Employee shall appear as a featured On-Air Talent on other radio broadcast programs of Company, as mutually agreed upon by the parties hereto.

Employee: Samuel L. Jones Jr.  
Employee Initials: 

Vice President: Linda J. Vilardo  
Vice President Initials:

(c) Employee shall perform such duties as are usual and customary for a radio broadcast writer, including but not limited to creating characters, writing scripts, and developing story lines for Company's radio broadcast programs, as mutually agreed upon by the parties hereto.

(d) Employee shall perform production and programming duties, including but not limited to script writing, taping, editing, and performing and/or supervising remote radio broadcasts.

(e) Employee shall participate in the presentation of promotion announcements on Company's programs, including leads into and leads out of such announcements.

(f) Upon Company's request, reasonable notice, and mutual agreement of the parties hereto, Employee shall make personal appearances at promotional events sponsored by Company and/or Company's advertisers and sponsors, except that with respect to Employee's *Huggy Lowdown* character, Employee shall be required to make no more than four (4) appearances per year in each radio market where the *Tom Joyner Morning Show* is broadcast.

(g) Upon Company's request, reasonable notice, and mutual agreement of the parties hereto, Employee shall make personal appearances at meetings or before groups and organizations in support of the charitable and other worthy causes endorsed by Company and/or Company's advertisers and sponsors, and shall make such other personal appearances as determined to be in the interest of Company and/or Company's advertisers and sponsors. It is expressly agreed and understood that Employee's endorsements will be determined on a case by case basis and will be subject to the mutual agreement of the parties hereto.

(h) Upon Company's request and reasonable notice, Employee may be required to travel to various radio markets, the costs of which travel shall be borne by Company.

3.2. Except as otherwise set forth herein, Employee acknowledges and understands that all programs and announcements associated with Employee's duties, including the scope of Employee's duties with respect thereto, and the dates, times, duration, titles, formats, content elements, and characteristics thereof, shall be as designated by Company and shall be subject to change by Company at any time, as Company may determine in its sole discretion.

3.3. Employee's duties shall be performed in a competent and artistic manner and to the best of Employee's ability. Company will respect and encourage Employee's creative and artistic expression in performing characters, writing scripts, and developing storylines for broadcast, so long as Employee's work comports with the terms and conditions of Section 7 and Section 16 of this Agreement.

3

Employee: Samuel L. Jones Jr.  
Employee Initials: _____

Vice President: Linda J. Vilardo  
Vice President Initials: _____

    3.4.    Employee shall devote Employee's full time, energy, and skill to the performance of the services in which Company is engaged, at such time and place as Company may direct. Employee shall not undertake, either as an owner, director, shareholder, employee or otherwise, the performance of services for compensation (actual or expected), either directly or indirectly, on behalf of Employee or any other person or entity, without the prior express written consent of Company. The foregoing is not intended to, and shall not be construed as, prohibiting Employee from performing extracurricular work as a stand-up comedian or actor, so long as such work does not conflict with, and is not inconsistent with, Employee's obligations under this Agreement.

    3.5.    The normal working hours of Employee shall be as established by such manager as Company may designate.

4.    Compensation.

    (a)    Signing Bonus. Company shall pay to Employee a one-time signing bonus in the amount of Fifty Thousand Dollars ($50,000), subject to applicable federal, state, and local deductions and payable in accordance with Company's standard payroll schedule and policy. In the event that Employee resigns or is terminated for cause within one (1) year after Employee commences employment with Company, Employee shall repay to Company the signing bonus, prorated on a monthly basis for the period not worked during the first year of Employee's employment.

    (b)    Base Compensation. During the Term of this Agreement, Company shall pay to Employee base compensation in the amount Two Hundred Thousand Dollars ($200,000) per year, subject to applicable federal, state, and local deductions and in accordance with Company's standard payroll schedule and policy. On each anniversary date of Employee's employment with Company during the Term hereof, Employee shall be entitled to a three percent (3%) increase in Employee's base compensation, subject to applicable federal, state, and local deductions and payable in accordance with Company's standard payroll schedule and policy.

5.    Vacation and Benefits.

    5.1.    Employee shall be eligible to accrue up to ten (10) vacation days annually, in accordance with Company's policies and procedures. All vacation requests must be approved in advance by such manager as Company may designate.

    5.2.    Employee shall be eligible to participate in the employee benefit plans and programs that Company generally makes available to its employees, subject to the terms and conditions of each such benefit plan or program. Notwithstanding the foregoing, any severance payable to Employee shall be governed solely by this Agreement, and Employee shall not be eligible to participate in any severance program of general application maintained by Company.

Employee: Samuel L. Jones Jr.
Employee Initials: ___

Vice President: Linda J. Vilardo
Vice President Initials: ___

5.3. Company reserves the right to amend or change, in its sole discretion, any of its employee benefit plans and programs.

6. Exclusive Services and Rights.

6.1. During the Term of this Agreement, Employee shall not render any services of the kind or nature provided for under this Agreement, either directly or indirectly, on behalf of Employee or any other person or entity, without the prior express written consent of Company. Company hereby expressly consents to Employee's continued work as a stand-up comedian and actor, so long as such work does not conflict with, and is not inconsistent with, Employee's obligations under this Agreement.

6.2. During the Term of this Agreement, Employee shall not permit the use of Employee's legal name, professional name, nickname, sobriquet, voice, recorded voice, biographical material, portrait, picture, caricature, or likeness to endorse any entity, product, or service, or for any other charitable or commercial purpose, without the prior express written consent of Company, which consent shall not be unreasonably withheld. Company hereby expressly consents to Employee's continued work as a stand-up comedian and actor, so long as such work does not conflict with, and is not inconsistent with, Employee's obligations under this Agreement.

6.3. Employee acknowledges and agrees that, during the Term of this Agreement, Company shall have the right to use Employee's legal name, professional name, nickname, sobriquet, voice, recorded voice, biographical material, portrait, picture, caricature, and likeness for purposes of advertising, trade, promotion, and publicity in connection with the businesses, services, and products of Company, such uses to be at such times, in such manner, and through such media as Company, in its sole discretion, may determine.

6.4. During the Term of this Agreement, Company shall have an exclusive license to use the Huggy Lowdown Trademark in Company's Washington, D.C. radio market and on Company's nationally syndicated radio programs, which license is herewith given by Employee to Company.

6.5. Company, at its option, shall have the right to syndicate all or any portion of Employee's performance to radio stations owned by or affiliated with Company and/or to radio stations not owned by or affiliated with Company. In such event, Company, in its sole discretion, shall determine which entity will be responsible for syndication and which radio stations will become affiliates and/or cease to be affiliates.

6.6. Nothing contained in this Agreement is intended to preclude Employee from making personal appearances as a comedian, on television, and in other media that are not related to Company, provided that such activities do not conflict with, and are not inconsistent with, Employee's obligations under this Agreement.

Employee: Samuel L. Jones Jr.  
Employee Initials: _____

Vice President: Linda J. Vilardo  
Vice President Initials: _____

 6.7. Employee shall be entitled to retain one hundred percent (100%) of the revenues derived from Employee's extracurricular performances and activities, including but not limited to Employee's merchandising of the Huggy Lowdown Trademark.

7. <u>Personal Conduct</u>. Employee agrees to comply with all applicable policies, requirements, directions, requests, and rules of Company, and further agrees to not at any time engage in or commit any act that reasonably could be considered to reflect unfavorably on Company's reputation, bring Company into public scandal, or subject Company to ridicule, as determined solely by Company, including but not limited to matters of moral turpitude, theft, fraud, or deceit. Company agrees to act and exercise its discretion in good faith in determining whether Employee's conduct may be in violation of this Section 7.

8. <u>Payola</u>. Employee warrants and represents that, during the Term of this Agreement, Employee will not accept or agree to pay any money, service or other valuable consideration, as defined in Section 507 of the Communications Act of 1934, as amended, for the broadcast of any matter over Company's stations, without prior disclosure to Company. Employee agrees to promptly notify Company of any occurrences whereby anyone offers any money, service or other valuable consideration for the broadcast of any matter over Company's stations. Employee acknowledges and agrees that Company shall have the right to terminate this Agreement for cause upon Employee's violation of this Section 8.

9. <u>Plugola</u>. Employee warrants and represents that, during the Term of this Agreement, Employee will not broadcast material that directly or indirectly promotes any activity in which Employee has a financial interest, absent prior disclosure to, and approval by, Company. Should such approval be granted, Employee shall disclose the fact of Employee's financial interest in the activity to the listening public.

10. <u>Termination</u>.

  (a) <u>Termination for Cause</u>. Employee's employment may be terminated at any time upon written notice for cause, as reasonably and in good faith may be determined by Company. For purposes of this Agreement, "cause" shall mean any one or more of the following:

   (i) Employee's breach of any material provision of this Agreement.

   (ii) Employee's indictment or conviction on a felony charge or other crime involving moral turpitude, or plea of guilty or *nolo contendere* to a felony charge or other crime involving moral turpitude.

   (iii) Employee's willful refusal to follow the reasonable instructions of Employee's superiors, including but not limited to Company's Chief Executive Officer and President or Board of Directors.

6