Bruce P. Keller (BK-9300)  ELECTRONICALLY FILED
Jeremy Feigelson (JF-4963)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendant and Third-Party/Counterclaim-Plaintiff*
*Infinity Broadcasting Corporation of Washington, D.C. n/k/a*
*CBS Radio Inc. of Washington, D.C.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
SAMUEL L. JONES JR.,                              :

      Plaintiff,                                 :   No. 07 Civ. 5693 (BSJ) (AJP)

  -against-                                      :

INFINITY BROADCASTING CORPORATION OF              :   **DECLARATION OF**
WASHINGTON, D.C. n/k/a CBS RADIO INC. OF              **BRUCE P. KELLER**
WASHINGTON, D.C.,                                 :
                                                      **EXHIBIT 3, PART 2**
      Defendant.
                                                  :
------------------------------------------------------------------------x
INFINITY BROADCASTING CORPORATION OF              :
WASHINGTON, D.C. n/k/a CBS RADIO INC. OF
WASHINGTON, D.C.,                                 :

      Counterclaimant and Third-Party Plaintiff,  :

  -against-                                      :

SAMUEL L. JONES JR.,                              :

      Counterclaim Defendant, and                 :

RADIO ONE, INC.,
                                                  :
      Third-Party Defendant.                      x

22525486v1

Employee: Samuel L. Jones Jr.
Employee Initials: ___

Vice President: Linda J. Vilardo
Vice President Initials: ___

- (iv) Employee's dereliction of and gross failure to perform the duties of Employee's position in a satisfactory manner.

- (v) Employee's willful disregard of Company policies and procedures.

- (vi) Employee's use, possession, or distribution of illegal drugs or a non-prescribed controlled substance, or Employee's abuse of alcohol, or Employee's being under the influence of any of the foregoing on Company premises or during the performance of Employee's duties.

- (vii) Employee's fraud, misappropriation of funds, embezzlement, theft or acts of similar dishonesty.

- (viii) Employee's intentional or willful misconduct that may subject Company to criminal or civil liability.

- (ix) Breach of Employee's duty of loyalty, including the diversion or usurpation of corporate opportunities properly belonging to Company.

- (x) Employee's falsification of Company documents or other misrepresentation related to the business and affairs of Company.

- (xi) Any conduct of Employee that significantly and adversely affects Company's reputation and goodwill in the community.

(b) <u>Termination by Death or Disability</u>.

- (i) Employee's employment shall terminate immediately upon Employee's death.

- (ii) Company shall have the right to terminate Employee's employment immediately upon written notice to Employee, if Employee, with or without a reasonable accommodation, shall be incapable of substantially performing the essential functions, duties, responsibilities, and obligations set forth in this Agreement because of physical, mental or emotional incapacity resulting from injury, sickness, or disease, for a period of sixty (60) consecutive days.

- (iii) Employee's heirs, beneficiaries, successors, or assigns shall not be entitled to any of the compensation or benefits to which Employee is entitled under this Agreement, except: (a) to the extent specifically provided in this Employment Agreement; (b) to the extent required by law; or (c) to the extent that Company's benefit plans or policies under which Employee is covered provide a benefit to Employee's heirs, beneficiaries, successors, or assigns.

(c) <u>Return of Company Property</u>. In the event of any termination of this Agreement, Employee shall immediately return to Company, without limitation, all papers, materials, reports, memoranda, notes, plans, records, reports, computer tapes,

Employee: Samuel L. Jones, Jr.  
Employee Initials: *[initialed]*

Vice President: Linda J. Vilando  
Vice President Initials: *[initialed]*

software, and any other documents or items of whatever nature owned by Company or supplied to Employee by Company pursuant to this Agreement.

11. Confidential Information.

   11.1. "Confidential Information" is information however delivered, disclosed or discovered during the Term of this Agreement, that Employee has, or in the exercise of ordinary prudence should have, reason to believe is confidential or that Company designates as confidential, including but not limited to:

   (a) *Company Information*: Company proprietary information, technical data, trade secrets or know-how, including but not limited to: research, processes, pricing strategies, communication strategies, sales strategies, sales literature, sales contracts, product plans, products, inventions, methods, services, computer codes or instructions, software and software documentation, equipment, costs, customer lists, business studies, business procedures, finances and other business information disclosed to Employee by Company, either directly or indirectly in writing, orally or by drawings or observation of parts or equipment and such other documentation and information as is necessary in the conduct of the business of Company; and

   (b) *Third Party Information*: confidential or proprietary information received by Company from third parties.

   11.2. Company's failure to mark any of the Confidential Information as confidential or proprietary will not affect its status as Confidential Information.

   11.3. Employee agrees that the terms, conditions and subject matter of this Agreement are considered Confidential Information.

   11.4. Confidential Information does not include information that has ceased to be confidential by reason of any of the following: (i) was in Employee's possession prior to the date of this Agreement, *provided* that such information is not known by Employee to be subject to another confidentiality agreement with, or other obligation of secrecy to, Company, or another party; (ii) is generally available to the public and became generally available to the public other than as a result of a disclosure in violation of this Agreement; (iii) became available to Employee on a non-confidential basis from a third party, *provided* that such third party is not known by Employee to be bound by a confidentiality agreement with, or other obligation of secrecy to, Company, or another party or is otherwise prohibited from providing such information to Employee by a contractual, legal or fiduciary obligation; or (iv) Employee is required to disclose pursuant to applicable law or regulation (as to which information Employee will provide Company with prior notice of such requirement and, if practicable, an opportunity to obtain an appropriate protective order).

Employee: Samuel L. Jones Jr.
Employee Initials: _____

Vice President: Linda J. Vilardo
Vice President Initials: _____

11.5. Employee shall not, either during or after the termination of Employee's employment with Company, communicate or disclose to any third party the substance or content of any Confidential Information, or use such Confidential Information for any purpose other than the performance of Employee's obligations hereunder. Employee acknowledges and agrees that any Confidential Information obtained by Employee during the performance of Employee's employment concerning the business or affairs of Company, or any subsidiary, affiliate, or joint venture of Company, is the property of Company, or such subsidiary, affiliate, or joint venture of Company, as the case may be.

11.6. Employee agrees to return all Confidential Information, including all copies and versions of such Confidential Information (including but not limited to information maintained on paper, disk, CD-ROM, network server, or any other retention device whatsoever) and other property of Company, to Company immediately upon Employee's separation from Company (regardless of the reason for the separation).

11.7. The terms of this Section 11 are in addition to, and not in lieu of, any other contractual, statutory, or common law obligations that Employee may have relating to the protection of Company's Confidential Information or its property. The terms of this Section 11 shall survive indefinitely following Employee's separation from Company.

12. Noncompetition and Nonsolicitation.

12.1. Employee acknowledges that Employee's services are of special and unique value to Company and that Company has expended, and will expend, substantial resources in marketing and promoting Employee to Company's listeners, advertisers, and sponsors in order to develop good will among its listeners, advertisers, and sponsors. Employee further acknowledges that, by reason of Employee's employment, Employee will have access to and may acquire considerable knowledge of proprietary or confidential information concerning Company's business, operations, sales goals, marketing plans, business strategies, clients, potential clients, and suppliers, which information, if known by or disclosed to Company's competitors or clients, would place Company at a competitive disadvantage and cause harm to Company. In light of the foregoing, Employee agrees, without limitation, that for a period of six (6) months immediately following the termination of Employee's employment with Company ("Restrictive Period"):

   (a) Employee shall not be employed as an on-air talent or writer, and shall not otherwise provide services in the nature of an on-air talent or writer, for any business that (1) directly competes with the businesses of Company and (2) is located within a seventy five-mile radius of Company's transmission towers in the Washington, D.C. radio market and/or within a seventy five-mile radius of Company's transmission towers in any market

Employee: Samuel L. Jones Jr.
Employee Initials: _____

Vice President: Linda J. Vilardo
Vice President Initials: _____

    in which Employee appeared as an on-air talent within the preceding ninety (90) days. The foregoing shall not preclude Employee from accepting employment with a business or corporation in a position that does not involve performing duties as, or similar to those of, an on-air talent or writer.

  (b) Employee shall not, directly or indirectly, solicit, divert, or take away, or attempt to solicit, divert, or take away, the business or patronage of any client, potential client, or account of Company that was a client, potential client, or account of Company while Employee was employed by Company.

  (c) Employee shall not, directly or indirectly, induce or attempt to induce any employee of Company, or any of Company's subsidiaries and affiliates, to leave the employ of Company, or any of Company's subsidiaries and affiliates.

  (d) Employee shall not, directly or indirectly, employ or attempt to employ any person who is an employee of Company, or any of Company's subsidiaries and affiliates.

  (e) Employee shall not, directly or indirectly, solicit, induce, or attempt to induce any customer, supplier, or third party having a business relationship with Company, or any of Company's subsidiaries and affiliates, to cease doing business with, or materially alter its relationship with, Company, or any of Company's subsidiaries and affiliates.

 12.2. Employee acknowledges and agrees (i) that the relevant public policy aspects of covenants not to compete have been discussed with Employee, (ii) that every effort has been made to limit the Restrictive Period and the restrictions placed upon Employee to those that are reasonable and necessary to protect Company's legitimate interests, and (iii) that the restrictions set forth herein will not prevent Employee from earning a living.

 12.3. If any restriction set forth in this Section 12 is found by any court of competent jurisdiction to be unenforceable, it is hereby agreed that this Section 12 shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

13. <u>Equitable Relief</u>.

 13.1. Employee acknowledges and agrees that Employee's breach of Section 11 or Section 12 of this Agreement will cause Company substantial and irrevocable harm, and therefore, in the event of any such breach, in addition to such other remedies that may be available to Company, Company shall be entitled to equitable relief, including specific performance and injunctive relief.

10

Employee: Samuel L. Jones Jr.  
Employee Initials: _____

Vice President: Linda J. Vilardo  
Vice President Initials: _____

    13.2.  In the event that legal action is deemed necessary to enforce this Agreement, the prevailing party shall be entitled to an award of costs and reasonable attorneys' fees, plus interest.

14.   Ownership of Intellectual Property.

    14.1.  All Intellectual Property (defined below) is, shall be and shall remain the exclusive property of Company. Employee hereby assigns to Company all right, title and interest, if any, in and to the Intellectual Property; provided, however, that, when applicable, Company shall own the copyrights in all copyrightable works included in the Intellectual Property pursuant to the "work-made-for-hire" doctrine (rather than by assignment), as such term is defined in the Copyright Act of 1976. All Intellectual Property shall be owned by Company irrespective of any copyright notices or confidentiality legends to the contrary that may be placed on such works by Employee or by others. Employee shall ensure that all copyright notices and confidentiality legends on all work product authored by Employee or anyone acting on Employee's behalf shall conform to Company's practices and shall specify Company as the owner of the work.

    14.2.  The term "Intellectual Property" shall mean all trade secrets, ideas, inventions, designs, developments, devices, methods and processes (whether or not patented or patentable, reduced to practice) and all patents and patent applications related thereto, all copyrights, copyrightable works and mask works and all registrations and applications for registration related thereto, all confidential information, and all other proprietary rights contributed to, or conceived or created by, Employee or anyone acting on Employee's behalf (whether alone or jointly with others) at any time during the term of this Agreement that (i) relate to the business or to the actual or anticipated research or development for Company; (ii) result from any Services that Employee or anyone acting on Employee's behalf perform for Company; or (iii) are created using the equipment, supplies or facilities of Company.

    14.3.  Company expressly disclaims any right, title or interest in or to Employee's trademarks and personal works, including any scripts, characters, and/or storylines created by Employee in Employee's personal capacity or prior to Employee's employment with Company.

15.   Legal Right and Conflict of Interest.

    15.1.  Employee covenants and warrants that Employee has the unlimited legal right to enter into this Agreement and to perform in accordance with its terms without violating the rights of others or any applicable law, and that Employee has not and shall not become a party to any other agreement of any kind and shall not perform any work or service on behalf of any individual, business, corporation, or organization that would create a conflict of interest in the performance of Employee's obligations under this Agreement. Subject to the truth and accuracy of the aforesaid covenants and warranties, Company shall cause counsel (the "Firm") of its selection, at Company's sole expense, to represent the interests of

11

Employee: Samuel L. Jones Jr.  
Employee Initials: _____

Vice President: Linda J. Vilardo  
Vice President Initials: _____

Employee in any dispute or litigation with Infinity Broadcasting Corporation of Washington, D.C. *d/b/a* WPGC-FM resulting from Employee's entry into this Agreement and/or relating to Employee's right to license the Huggy Lowdown Trademark to Company. In connection therewith, Employee shall execute, simultaneously herewith, a retainer agreement with the Firm in the form previously approved by Employee.

15.2. Employee agrees to conduct Employee's personal affairs in a manner that does not conflict with Company's interests. During the Term of this Agreement, Employee agrees not to enter into any transaction, acquire any interest, or take any action that is contrary to Company's interests or incompatible with Employee's duty of loyalty to Company and Employee's obligations under this Agreement.

15.3. Employee acknowledges and agrees that Employee will not, directly or indirectly (whether as a director, officer, partner, member, employee, agent, or stockholder of another company), compete with Company, or furnish any service to Company or its customers, as an independent contractor, while employed by Company. Employee further agrees that Employee will not use Company's name to further Employee's personal interests.

16. Retractions and Corrections. Employee acknowledges and agrees that, if Employee utters, disseminates, publishes, broadcasts, or otherwise communicates any matter, material, or speech (i) that contains indecent, obscene, profane, or offensive language, or (ii) that reasonably may be construed as containing indecent, obscene, profane, or offensive language, or (iii) that otherwise could give rise to a claim of libel, slander, product disparagement, trademark infringement, violation of rights of privacy, infringement of copyrights or any proprietary rights, or of unfair competition, or (iv) that contradicts or violates, in whole or in part, Company policy or any instructions or notices given to Employee by Company, Company shall have the right to demand that Employee issue, broadcast, or publish a retraction or correction of the matter, material, or speech at issue. Upon receipt of Company's request, Employee shall promptly and in good faith, in consultation with Company, issue, broadcast, and/or publish a retraction or correction of the matter, material, or speech at issue. Company shall have the right to review and approve the text, terminology, and phraseology of any such retraction or correction. In the event of any dispute regarding the text of any retraction or correction, Company's determination with regard to such text shall be final and binding. Any failure or refusal by Employee to issue, broadcast, and/or publish a retraction or correction as requested by Company shall be a breach of this Agreement and shall automatically relieve Company from any duty or obligation, if such should then exist, to defend, indemnify or hold Employee harmless for any matter arising hereunder.

17. Force Majeure. Company shall have no liability under this Agreement if performance by Company of its obligations hereunder shall be prevented, interfered with, interrupted or omitted because of any act of God, act of terrorism, failure of facilities, labor dispute, or government or court action, or any other cause beyond the control of Company.

Employee: Samuel L. Jones Jr.
Employee Initials: _____

Vice President: Linda J. Vilardo
Vice President Initials: _____

18. <u>Arbitration</u>.  Each controversy, dispute or claim between the parties arising out of or relating to this Agreement or Employee's employment with Company (except for claims for injunctive or equitable relief), which controversy, dispute or claim is not settled in writing within thirty (30) days after the "Claim Date" (defined as the date on which a party subject to this Agreement gives written notice to the other that a controversy, dispute or claim exists), shall be settled by binding arbitration in the State of Maryland in accordance with the provisions of the American Arbitration Association's National Rules for Resolution of Employment Disputes, which shall constitute the exclusive remedy for the settlement of any controversy, dispute or claim.  Any decision rendered by the arbitrator and such arbitration shall be final, binding, and conclusive, and judgment shall be entered in any court in the State of Maryland having jurisdiction.  Each party shall bear its own costs in connection with the arbitration, including attorneys' fees.

**Arbitration agreement acknowledged and agreed:**

**Employee Initials:** _____

19. <u>Notices</u>.  All notices and other communications required or permitted to be given by this Agreement shall be in writing and shall be deemed given if and when either hand delivered and a signed receipt is given thereof, or upon the third day after mailing if sent by registered or certified United States mail, return receipt requested, postage prepaid and addressed as follows, or at such other address as any party hereto shall notify the other of in writing:

| | |
|---|---|
| If to Company: | Radio One, Inc.<br>5900 Princess Garden Parkway, 8th Floor<br>Lanham, Maryland  20706<br>Attention:  General Manager |
| Copy to Company Attorney: | Radio One, Inc.<br>5900 Princess Garden Parkway, 7th Floor<br>Lanham, Maryland  20706<br>Attention:  General Counsel |
| If to Employee: | Samuel L. Jones Jr.<br>(At last known address on file with Company) |

20. <u>Miscellaneous Provisions</u>.

   (a) <u>No Assignment or Delegation</u>.  Employee acknowledges that the services to be rendered by Employee pursuant to this Agreement are unique and personal, and agrees that Employee shall not assign any of Employee's rights nor delegate any of Employee's duties under this Agreement.

   (b) <u>No Waiver</u>.  Failure to invoke any right, condition, or covenant in this Agreement by either party shall not be deemed to imply or constitute a waiver of any right, condition, or covenant of this Agreement.

13

Employee: Samuel L. Jones Jr.
Employee Initials: _____

Vice President: Linda J. Vilardo
Vice President Initials: _____

(c) <u>Severability and Enforceability</u>. In the event that any provision of this Agreement shall be held invalid by a court of competent jurisdiction, such provision shall be deleted from the Agreement, which shall then be construed to give effect to the remaining provisions thereof. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision. Similarly, if the scope of any restriction or covenant contained herein should be or become too broad or extensive to permit enforcement thereof to its full extent, then the parties hereto agree that a court of competent jurisdiction should enforce any such restriction or covenant to the maximum extent permitted by law.

(d) <u>Governing Law</u>. This Agreement and the relationship among the parties shall be construed under and governed by the laws of the State of Maryland, without regard to the conflict of laws rules thereof, and the parties hereby submit to the jurisdiction of the state and federal courts of the State of Maryland for the purpose of (a) resolving any dispute seeking preliminary or permanent injunctive relief, or (b) enforcing the final decision or award of the arbitrator.

(e) <u>Headings</u>. The headings in this Agreement are solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

(f) <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.

(g) <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes any and all previous written or oral agreements, representations, warranties, statements, correspondence, and understandings between the parties. This Agreement cannot be amended or modified except by a written agreement signed by all parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the day and year first above written.

RADIO ONE, INC.
By: _____
Linda J. Vilardo
Title: Vice President

SAMUEL L. JONES JR.
Signature: _____

Address:   743 Fairmont Street
           Apartment 206
           Washington, D.C. 20001

14