| | |
|---|---|
| Bruce P. Keller (BK-9300)<br>Jeremy Feigelson (JF-4963)<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, New York 10022<br>(212) 909-6000 | ELECTRONICALLY FILED |

*Attorneys for Defendant and Third-Party/Counterclaim-Plaintiff
Infinity Broadcasting Corporation of Washington, D.C. n/k/a
CBS Radio Inc. of Washington, D.C.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

| | | |
|---|---|---|
| SAMUEL L. JONES JR., | : | |
| Plaintiff, | : | No. 07 Civ. 5693 (BSJ) (AJP) |
| -against- | : | |
| INFINITY BROADCASTING CORPORATION OF WASHINGTON, D.C. n/k/a CBS RADIO INC. OF WASHINGTON, D.C., | : | **DECLARATION OF<br><u>SAMUEL ROGERS</u>** |
| Defendant. | : | |

------------------------------------------------------------------------x

| | |
|---|---|
| INFINITY BROADCASTING CORPORATION OF WASHINGTON, D.C. n/k/a CBS RADIO INC. OF WASHINGTON, D.C., | : |
| Counterclaimant and Third-Party Plaintiff, | : |
| -against- | : |
| SAMUEL L. JONES JR., | : |
| Counterclaim Defendant, and | : |
| RADIO ONE, INC., | : |
| Third-Party Defendant. | x |

Samuel Rogers declares:

1. I am employed as Senior Vice President and General Manager of WPGC-FM ("WPGC"), a station owned by CBS Radio in the Washington, D.C. market. I have overall responsibility for all commercial and creative matters affecting WPGC. I make this declaration on personal knowledge, except where matters are stated on information and belief, as to which I believe those matters to be true.

2. Since 1993, WPGC has broadcast the Donnie Simpson Morning Show during "morning drive," from 6 a.m. to 10 a.m. on weekday mornings. The Donnie Simpson Morning Show is consistently the highest-rated show, or among the highest-rated shows, in its time slot. Morning drive is among the most important and lucrative time slots for WPGC, and in radio generally. Protecting the competitive position of the Donnie Simpson Morning Show is extremely important to the commercial success of WPGC.

3. In or about the year 2000, the Donnie Simpson Morning Show began featuring a character known as "HUGGY LOWDOWN," who called in to Donnie Simpson on air and, for approximately five minutes, discussed and commented on current celebrity or political events. The HUGGY LOWDOWN call-ins began as an occasional feature and grew to be a popular daily part of the Donnie Simpson Morning Show.

4. To the best of my knowledge, information and belief, the HUGGY LOWDOWN character was originally created by Chris Paul, a writer and performer employed by the station, and Mr. Paul arranged for the HUGGY LOWDOWN character to be played by Samuel Jones, the plaintiff in this action. I regularly observed Mr. Paul

working on material for the HUGGY LOWDOWN character and instructing Mr. Jones by telephone about how to play the character. This was a major part of Mr. Paul's job responsibilities.

5. In late 2003 or early 2004, I learned that Mr. Jones had filed a Trademark Application in the U.S. Patent and Trademark Office, seeking to register the HUGGY LOWDOWN mark. CBS Radio opposed Mr. Jones's Trademark Application, and filed a formal written opposition. CBS Radio took this step because we had invested substantial resources in developing and promoting the HUGGY LOWDOWN character in connection with our radio station.

6. CBS Radio and Mr. Jones resolved their differences by entering into two signed written agreements. These were a personal services agreement (the "Services Agreement") and a trademark license agreement (the "License Agreement"). Both agreements were executed on May 26, 2005. I understand that these agreements are being submitted to the court as exhibits to the Declaration of Marissa M. Grimes.

7. My understanding of the Services Agreement was that Mr. Jones agreed to call-in to the Donnie Simpson Morning Show on WPGC at least five times per week. We agreed to pay him base compensation of $23,000 in the first year. CBS Radio also had a unilateral right to renew the Services Agreement for one year if Mr. Jones was given notice in writing at least 30 days before expiration.

8. My understanding of the License Agreement was that:

   a. CBS Radio would have exclusive rights to use the HUGGY LOWDOWN mark for CBS Radio programming in the Washington, D.C. area for the duration of the agreement plus one year;

   b. Mr. Jones could not use HUGGY LOWDOWN in the Washington, D.C. radio market for as long as the Donnie Simpson Morning Show was on the air; and

   c. Mr. Jones would be free to use HUGGY LOWDOWN in all other contexts, such as stand-up comedy, which he had already been doing with our consent.

9. From the time the License Agreement and Services Agreement were signed in 2005, up until Mr. Jones's recent decision to jump to the competition, both parties acted completely consistently with the agreements as I have described them here.

10. Jay Stevens worked directly with Mr. Jones in connection with the negotiation of the License Agreement and the Services Agreement. At the time, Mr. Stevens was WPGC's Vice President of Programming. In late 2006, Mr. Stevens left WPGC. He now works for Radio One, Inc. ("Radio One"), the third-party defendant in this action, as Senior Vice President for Programming Content. Radio One is a direct competitor of CBS Radio. Radio One owns WMMJ-FM, better known as "Majic 102.3 FM," a radio station that competes directly with WPGC in the urban programming niche in the Washington, D.C. Total Survey Area.

11. On April 27, 2006, Jay Stevens on behalf of WPGC sent Mr. Jones a letter notifying him that we were exercising our option to renew the Services Agreement for one year.

12. Mr. Jones did not object that the notice of extension was untimely. Instead he continued to perform for another year, as did CBS Radio, according to the terms of the original Service Agreement and License Agreement.

13. In the first quarter of 2007, CBS Radio approached Mr. Jones to attempt to negotiate a new agreement for his services, because the expiration of the one-year renewal period was coming up. Reggie Rouse was the point person for CBS Radio in these discussions. To the best of my knowledge, information and belief, Mr. Jones never told Mr. Rouse that he thought the notice of extension was ineffective or that he was currently without any agreement. Instead, the discussions between Mr. Rouse and Mr. Jones proceeded on the understanding that the original Services Agreement had been validly renewed and was still in place.

14. Mr. Jones advised us that Radio One, where Jay Stevens had gone to work after leaving WPGC (and where Mr. Stevens still works today), had offered him a substantial pay increase to join WMMJ, a rival station. On or about June 11, 2007, Mr. Jones gave final notice to CBS Radio that he had decided to leave WPGC.

15. Beginning on or about Friday, July 13, 2007, Radio One began running promotions for the HUGGY LOWDOWN character on its Majic 102.3 FM radio station and on the associated station website, www.majic1023.com. These promotions stated

that HUGGY LOWDOWN would be joining the nationally-syndicated Tom Joyner Morning Show on Majic 102.3 as of Monday, July 16, 2007.

16. Since on or about July 16, 2007, Mr. Jones has made multiple appearances on the Tom Joyner Morning Show on WMMJ-FM performing under the same HUGGY LOWDOWN name that was previously used on The Donnie Simpson Morning Show on WPGC. Radio One has advised CBS Radio that it intends to keep putting Mr. Jones on air as HUGGY LOWDOWN despite our objections.

17. The HUGGY LOWDOWN routines were a uniquely popular and commercially important feature of The Donnie Simpson Morning Show. Based on my knowledge of WPGC and the radio market generally, even a limited number of radio appearances by Mr. Jones under the HUGGY LOWDOWN name on a non-CBS Radio station, particularly a direct rival of WPGC such as Majic 102.3, are likely to cause irreparable commercial injury to WPGC.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Lanham, Maryland this 20th day of July 2007.

_____
Samuel Rogers