Bruce P. Keller (BK-9300)  
Jeremy Feigelson (JF-4963)  
DEBEVOISE & PLIMPTON LLP  
919 Third Avenue  
New York, New York 10022  
(212) 909-6000  

ELECTRONICALLY FILED

*Attorneys for Defendant and Third Party/Counterclaim Plaintiff  
Infinity Broadcasting Corporation of Washington, D.C. n/k/a  
CBS Radio Inc. of Washington, D.C.*

UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK  

------------------------------------------------------------------------x  

| | |
|---|---|
| SAMUEL L. JONES JR., | : |
| Plaintiff, | : No. 07 Civ. 5693 (BSJ) (AJP) |
| -against- | : |
| INFINITY BROADCASTING CORPORATION OF WASHINGTON, D.C. n/k/a CBS RADIO INC. OF WASHINGTON, D.C., | : **REPLY MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION** |
| Defendant. | : |

------------------------------------------------------------------------x  

| | |
|---|---|
| INFINITY BROADCASTING CORPORATION OF WASHINGTON, D.C. n/k/a CBS RADIO INC. OF WASHINGTON, D.C., | : |
| Counterclaimant and Third-Party Plaintiff, | : |
| -against- | : |
| SAMUEL L. JONES JR., | : |
| Counterclaim Defendant, and | : |
| RADIO ONE, INC., | : |
| Third-Party Defendant. | : |

x

22522366v2

Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D.C. ("CBS Radio") submits this reply in support of preliminary injunctive relief against Samuel L. Jones Jr. and Radio One, Inc. ("Radio One").

## **PRELIMINARY STATEMENT**

CBS Radio seeks to enforce the one-year exclusivity provision of a trademark license and to prevent a direct competitor, Radio One, from using that trademark prior to May 26, 2008.  It is not an effort to preclude a former employee from working for a competitor.  Jones's opposition papers, obviously prepared far in advance of CBS Radio's own submission, deliberately seek to obscure the distinction between a trademark case and an employment case.  Once that distinction is made clear, immediate injunctive relief is appropriate for two reasons:

First, because this is solely a trademark dispute, issuing the requested injunctive relief will not require Jones either to (i) "leave the region he has called home for his entire lifetime and forego his daily contact with his 13-year old daughter" or (ii) "deny Jones his once-in-a-lifetime chance at economic liberation" by forcing him to return to CBS Radio on terms Jones believes to be "substantially below market."  (Pl. Mem. at 3, 21.)  Jones's agreement with Radio One ***does not require him to use the HUGGY LOWDOWN name***.[1]  Instead, he is a "full-time" "employee" of Radio One with a wide

---

1   Although Jones did not provide the Court with his June 11, 2007 employment agreement with Radio One (the "6/7/07 Agreement," even a version redacted for confidentiality purposes, he responded today to CBS Radio's insistence that it be provided so that CBS Radio could fully address his arguments and provide the Court with a complete evidentiary record.  Because that contract was provided under a verbal "Attorneys' Eyes Only" agreement on Saturday afternoon, July 21, 2007,

2

range of duties that go far beyond his limited role on the Tom Joyner Morning Show. 6/7/07 Agreement §§ 3.1, 3.4. None of those duties are contingent on his performing as HUGGY LOWDOWN. Instead, in a licensing provision entirely separate from the details of his employment obligations, Jones grants Radio One a broad license to use the HUGGY LOWDOWN mark that is not even limited to uses in connection with his on-air performance. *Id.* § 6.4. All of Jones' equitable and policy arguments rely on the proposition that he must play the HUGGY LOWDOWN character, by that name, in order to perform under his agreement with Radio One. That proposition is factually false, and the equitable and policy arguments therefore are irrelevant.

Second, Jones has simply miscalculated when he claims that CBS Radio's option to extend his Services Agreement was required to be exercised by April 25, 2006. (Pl. Mem. at 3.) The record makes clear that both Jones and CBS Radio shared the understanding that the April 27, 2006 notice of renewal was timely, as borne out by the fact that both parties continued to perform under the Services Agreement without any question or objection as to its validity.

## ARGUMENT

I.  **CBS RADIO'S REQUEST FOR A NARROW RESTRICTION ON THE USE OF A TRADEMARK WORKS NO INJUSTICE AGAINST JONES.**

Because the relief sought protects an exclusive trademark right and does not preclude Jones from working for Radio One, in the Washington, D.C. market or

---

unless other arrangements can be made, CBS Radio will, at a minimum, provide the Court with a copy for *in camera* inspection in connection with the July 23, 2007 preliminary injunction hearing.

3

anywhere else that the Tom Joyner Morning Show might be syndicated, all of Jones's arguments about the unenforceability of the post-termination restrictive employment covenants are irrelevant. But even were the Court to analyze the trademark exclusivity period like an employment restriction, it still would pass muster.

Courts routinely enforce such restrictions when they are deemed reasonable and protect a legitimate interest of the enforcer. *See H. B. Fuller Co. v. Hagen*, 363 F. Supp. 1325, 1333 (W.D.N.Y. 1973) (court issued an injunction when salesman violated two-year covenant not to compete; covenant was reasonable under applicable New York law, notwithstanding contention that injunction would impose severe hardship upon salesman and his wife who had eight children); *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69-70 (2d Cir. 1999)(when the "unique services" of the party become available to a competitor, "the employer obviously suffers irreparable harm"…and it is "very difficult to calculate monetary damages that would successfully redress the loss" of that unique service).

Jones's arguments are particularly off point because he was not even an employee of CBS Radio at all, but an independent contractor whose contractual duties were limited to a brief daily call-in segment:

> **Independent Contractor.** Contractor is engaged by station only for the purposes and to the extent set forth in this Agreement and the relationship to station shall at all times be that of an independent contractor. Nothing in this Agreement shall be construed to create an employer/employee or joint venturer relationship between or among any of the parties hereto, and Contractor agrees that he shall not be entitled to any benefits under any station or Infinity Broadcasting Corporation employee benefit plan. Contractor acknowledges that he is fully liable for and agrees to pay any and all income and employment taxes. Contractor agrees to keep all station information confidential.

4

*See* Grimes Decl., Ex. 2, pg. 3.  *See also* Am. Compl. ¶ 6, 8 (Jones was "an entertainer, primarily a comedian" and a "call-in guest" on The Donnie Simpson Show).  *See DS Courier Services, Inc. v. Seebarran*, 40 A.D.3d 271 (N.Y. App. Div 2007) (enforcing post-termination restriction in contract between courier service and independent contractor, which prohibited contractor from negotiating with six specific customers of courier service for 120 days after termination).  *See also Am. Para Professional Sys., Inc. v. Examination Mgmt. Servs., Inc.*, 214 A.D.2d 413 (N.Y. App. Div. 1995) (distinguishing between employment contracts and those involving independent contractors in finding agreement to be reasonably limited and not unduly burdensome); *Riccardi v. Modern Silver Linden Supply Co., Inc.*, 45 A.D.2d 191, 201 (N.Y. App. Div. 1974) (same; agreement was enforceable because it was reasonably limited and not unduly burdensome and not against public policy).

      Jones's status as an independent contractor for CBS Radio reinforces what this dispute is truly about: the HUGGY LOWDOWN mark originally created by WPGC and the attendant goodwill developed jointly by Jones and WPGC.  Here, Jones and WPGC contemplated a scenario where they would end their business relationship.  In anticipation of this possibility, they entered into a contract that protected both parties' interests.  Jones got to claim ownership of the mark, but CBS Radio got a one-year post-termination "window" added to its exclusive rights of use (the basis of this injunctive application).  CBS Radio also got assurances – which this application does *not* seek to enforce - that Jones would never use the mark in Washington, D.C. radio so long as WPGC continues to air the Donnie Simpson Morning Show where the mark was born.

5

Nothing in the post-termination restriction prevents Jones from working in his chosen profession in the Washington, D.C area, including on the radio. It simply prevents him, for one year, from depriving CBS Radio of a contractually promised additional year of trademark exclusivity. Allowing Jones to perform as HUGGY LOWDOWN in direct competition with WPGC would be to ignore WPGC's role developing the mark and the parties' valid and fair agreement.

*Nigra v. Young Broadcasting of Albany, Inc.*, 177 Misc.2d 664, 676 N.Y.S.2d 848 (N.Y. Sup. Ct. 1998) actually supports injunctive relief here. *Nigra* involved a full-time employee, not an independent contractor, who in her new broadcasting position, was not going to use any intellectual property in which her former employer had an interest. The court specifically distinguished the case before it from one where a former employee would be in a position to use intellectual property. *Nigra*, 676 N.Y.S.2d at 849.

Moreover, the court stated that "[a]nticompetitive employment agreements . . . are enforced . . . to the extent necessary to protect the employer from unfair competition." *Nigra*, 676 N.Y.S.2d at 849. This is exactly the result CBS Radio faces here, because Jones' and Radio One's use of the mark in violation of CBS Radio's rights of exclusivity amounts to infringement. Here, the HUGGY LOWDOWN mark was developed by, and previously associated with, WPGC on the radio. This condition of exclusivity was the key consideration for which CBS Radio relinquished its substantial claims to ownership over the mark. Mr. Jones's continued use of the mark at Radio One, in flagrant disregard of his exclusivity agreement with CBS Radio, would be the essence of unfair competition.

The terms of Jones's contract with Radio One expose his reliance on *Nigra* as misleading at best. That agreement is simply not contingent on his performing as HUGGY LOWDOWN, so the requested relief in this case would not force him to leave the Washington, D.C. area or even to forego his chosen line of work. He remains able to broadcast using his given name or any other chosen name.

II.  **THE LICENSE AGREEMENT IS STILL IN EFFECT BECAUSE THE EXTENSION OF THE SERVICES AGREEMENT WAS VALID.**

Contrary to Jones's contention, the option to extend the Services Agreement did not need to be exercised by April 25, 2006. As Jones agrees, under New York law, the day from which a period of time must be calculated is excluded from that calculation. N.Y. Gen. Constr. L. § 20 (McKinney 2003). The Services Agreement was signed on May 26, 2005. 365 days after—not including—that date was May 26, 2006. Had CBS Radio not opted to extend the agreement, the first day on which the Services Agreement would have no longer been valid would have been May 27, 2006. Thirty days prior to that was April 27, 2006 – the date of the renewal notice.

*Messina v. Lufthansa German Airlines*, 47 N.Y.2d 111 (N.Y. 1979) is not to the contrary. Although the *Messina* court excluded the day prior to "expiration" in its calculation of "ten (10) days before expiration," that simply does not speak to the proper meaning of "expiration date" as used in the Services Agreement between Jones and CBS Radio. *See* N.Y. Gen. Constr. Law § 19 (McKinney 2003) ("calendar day includes the time from midnight to midnight"). CBS Radio's interpretation of "expiration date" as the first day the contract is no longer in force was entirely reasonable. *See* Black's Law

7

Dictionary (8th ed. 2004) ("expiration date" is the "date on which an offer, option, or the like ceases to exist").  Moreover, Jones, by failing to object to the letter and continuing to work for CBS Radio (Jones Decl. ¶¶ 7-11), consented to CBS Radio's interpretation.  Accordingly, unlike in *Messina*, there is ample evidence that the parties' "subjective intent" was that April 27, 2006 was the day by which Jones had to be notified of the extension.  *See Messina*, 47 N.Y.2d at 114-115.

Moreover, it is well settled that even a "time is of the essence" provision may be waived through conduct.  *See Allen v. Kowalewski*, 239 A.D.2d 879, 879, 659 N.Y.S.2d 670, 670 (N.Y. App. Div. 1997); *Oleg Cassini, Inc. v. Couture Coordinates, Inc.*, 297 F. Supp. 821, 831 (D.C.N.Y. 1969) ("Courts look with disfavor on forfeitures and tend to find waiver where the conduct of the party claiming forfeiture or default warrants such a finding.").  As discussed in CBS Radio's opening memorandum, Jones waived any right to insist on timely notice by continuing to perform under his agreement without objection.  CBS Radio relied to its detriment on Jones's silence because it assumed the Services Agreement was valid and that the License Agreement would protect its rights to the HUGGY LOWDOWN mark for one year following May 26, 2007.  Treating Jones's conduct in these circumstances as a waiver would be consistent with the doctrine that conduct should be treated as a waiver in fairness to the party relying on the conduct.  *See Bank of N.Y. v. Ulster Heights Props., Inc.,* 494 N.Y.S.2d 345, 347 (N.Y. App. Div. 1985) (equity intervenes when delay in a renewal notice was due to ambiguity and adverse party "made no effort to notify" renewing party of change in status); *Gen. Elec. v. Nat'l Contracting*, 70 N.E. 928, 928 (N.Y. 1904) (finding a waiver where "defendant

8

could, no doubt, have insisted upon strict performance of the contract according to the written instrument, and, had it assumed, that position the plaintiff would then know where it stood").

Because Jones never told CBS Radio that he regarded the renewal notice as ineffective, the cases that he cites for the proposition that time is of the essence are irrelevant. Those cases all involved parties who specifically objected to a notice. In *Shubert Theatrical Co. v. Rath*, 271 F. 827 (2d Cir. 1921), the plaintiff/employer had validly exercised its option to renew the employment agreement with the defendants, but the defendants "advised the plaintiff that they refused to perform according to their agreement." *Shubert*, 271 F. at 829. Similarly, in *Urban Archaeology Ltd. v. Dencorp Inv., Inc.*, 12 A.D.3d 96, 783 N.Y.S.2d 330 (N.Y. App. Div. 2004) when one party advised the other of his "'probable intent' to implement the option," the other party, "in response, . . . stated that he would do everything in his power to frustrate performance of the option and that he made a number of threats designed to deter [the exercising party] from implementing the process." *Urban*, 12 A.D. at 99.

That is not what Jones did. To the contrary, he performed all of the obligations set forth in the Services Agreement without modification or objection and clearly manifested an intention to be bound by his deal with CBS Radio. *Watts v. Columbia Artists Mgmt.*, 591 N.Y.S.2d 234, 800 (N.Y. App. Div. 1992) (affirming a finding that post-expiration continuation of performance of a contract's terms implies in fact substantially the same terms and conditions).

9

In fact, there are other cases cited by Jones, in addition to *Nigra*, that are so inapposite as to show why his conduct cannot be interpreted any other way than as agreeing to an implied contract containing the same terms post termination. In *Bessette v. Niles*, 803 N.Y.S.2d 837 (N.Y. App. Div. 2005), it was because the parties had expressly "modified various terms of the written agreement through subsequent verbal agreements" that the court could not impose the written agreement as originally drafted. *Korody Marine Corp v. Minerals & Chemicals Philipp Corp.*, 300 F.2d 124, 125 (2d Cir. 1962) involved an "initial contract which expired by its terms." It did not involve any provisions for an extension on the same terms. *Autowest, Inc. v. Peugeot, Inc.*, 287 F. Supp. 718, 721 (E.D.N.Y. 1966), involved an "explicit undertaking to write out a new agreement each year." In *New York Tel. Co. v. Jamestown Tel.*, 26 N.E.2d 295, 297 (N.Y. 1940), the correspondence between the parties "affirmatively" showed "that the defendant . . . always contended the contract was at an end" and involved an "express repudiation" of the old agreement.

Although CBS Radio did not originally rely on it, Jones makes much of *Martin v. Campanaro*, 156 F.2d 127 (2d Cir. 1946). The relevance of that case, if any, is that it holds that whether a new contract containing the same provisions as the old is to be determined by an objective, reasonable person test. Here, as discussed above, that test is easily satisfied because both Jones and CBS Radio continued to perform under the Services Agreement with no substantial modifications. After performing under that agreement for an additional year, Jones cannot now claim the agreement was not effective during that time.

22522366v2

Section 32-532 of the D.C. Code has no application to this case is apparent for the following reasons. First, the License Agreement with its additional one-year, post-services trademark exclusivity simply is not a "broadcasting . . . employment contract provision" as a matter of law. There is a world of difference between a trademark license and a personal services agreement even if the two are entered into contemporaneously. Jones's own new contract with Radio One is further proof of that fundamental fact. His employment obligations in that new agreement are not in any way tied to his ability to use or to license Radio One the HUGGY LOWDOWN mark. Moreover, as noted, the effect of the exclusivity provision does not require Jones to "refrain from obtaining similar employment." D.C. Code Ann. § 32-532. Complete enforcement of the exclusivity provision still leaves Jones free to perform all of his on- and off-air employment obligations for Radio One.

Second, as the Jones/Radio One agreement itself makes clear, D.C. law has no applicability to this case. It is a matter of public record that WPGC and WMMJ are each licensed and located in Maryland, which does not have a provision analogous to § 32-532. Indeed, it is inequitable in the extreme for Radio One and Jones to argue that D.C. law somehow precludes a trademark exclusivity provision while failing to disclose to the Court that Jones's own new contract with Radio One contains a much broader restriction on his ability to work for other radio stations that compete with Radio One's. Although Jones would like to portray his case as something other than an attempt by Radio One to get its hands on a CBS Radio-developed asset, in which CBS Radio still holds exclusive

radio rights, it is worth noting that Jones's new employment agreement requires Radio One to pay for the entire expense of this litigation. 6/7/07 Agreement § 15.1.

## CONCLUSION

For the foregoing reasons, CBS Radio requests that the Court grant a preliminary injunction barring Jones and Radio One from using the HUGGY LOWDOWN mark in any way in connection with any radio broadcast or promotion in the Washington, D.C. Total Survey Area through May 26, 2008.

Dated: New York, New York
July 21, 2007

        Respectfully submitted,

        DEBEVOISE & PLIMPTON LLP

        By: _____/s/ Bruce P. Keller___

        Bruce P. Keller
        Jeremy Feigelson
        919 Third Avenue
        New York, New York 10022
        (212) 909-6000

        *Attorneys for Defendant and Third-Party/Counterclaim-Plaintiff Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D.C.*