UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SAMUEL L. JONES JR.,                        :
                                            :
                        Plaintiff,          : 07 CIV 5693 (BSJ) (AJP)
                                            :
    -against-                               :
                                            : DECLARATION OF
INFINITY BROADCASTING CORPORATION,          : SAMUEL L. JONES JR.
WASHINGTON, D.C. n/k/a CBS RADIO            : IN OPPOSITION TO
INC. OF WASHINGTON, D.C.,                    : DEFENDANT'S MOTION FOR
                                            : TEMPORARY RESTRAINTS
                        Defendant.          :

-------------------------------------------------------------x

**SAMUEL L. JONES JR.**, under penalty of perjury, declares as follows:

1.      I am an entertainer, a comedian and the plaintiff in this action.  In 1999, I developed a character known as Huggy Lowdown ("Huggy").  Huggy is a "street" character who offers gossip and information about celebrities, current events and politics with a comedic twist.  The comments are made in what may be considered street -- or irreverent -- language.  Commencing in 2000, until June 8 of this year, I was a regular feature on the Donnie Simpson Morning Show on station WPGC in Washington, D.C., operated by defendant.  On a daily basis, Monday through Friday, I, as Huggy, would "call-in" to the show and, for several minutes, entertain the radio audience with my insights.

2.      For my services, I was paid in various amounts, ranging from no compensation for several months when I started on WPGC to a high of about $26,000 by the time I left in June 2007.  During the time I appeared on WPGC, I also appeared at local venues such as comedy clubs, generally (but not always) as Huggy.  However, a substantial portion of

my income was derived from my appearances as Huggy on WPGC. Such income was used to support myself and to assist in the support of my 13-year old daughter, who lives with her mother in Washington, D.C., but who I see daily and with whom I have a close and loving relationship. I was born, raised and have lived almost all of my 39 years of age, in Washington, D.C.

3.    From about December 2006 until my departure on June 8, 2007, I had several discussions with WPGC officials about my remaining at WPGC. During these discussions, I was told I was a valuable member of the WPGC team. Nevertheless, the highest dollar amount offered to me for my services was about $45,000.

4.    The amount offered by WPGC to retain my services -- although a substantial raise -- appeared low for a "valued member of the WPGC team." As a result, I made an effort to find out what the market was for my services. In a relatively short time, I learned that my services were worth much more than WPGC had been offering. When I told WPGC officials that its offer to me was not enough, I was told that $45,000 was "the offer."

5.    My co-workers and bosses at WPGC were aware of my ties to D.C., and the fact that I would never leave the area. According to my attorney, Mr. Keene, WPGC officials referred to the 1-year restriction on my radio appearances as Huggy in the D.C. market. I do not believe it is fair for WPGC to have offered me the "choice" of accepting below market compensation or leaving my home. I performed all of my obligations to WPGC, and I should not be prevented from taking advantage of a life changing opportunity.

6.    In 2004, I had a dispute with WPGC regarding ownership of the Huggy Lowdown name. The dispute was resolved and, in 2005, I signed a license agreement in which CBS was by me licensed to use the Huggy character on the air. The license agreement was

written by CBS. I was also requested to sign a personal services contract (also written by CBS). Although I have no recollection of having signed such personal services contract, I was furnished a copy on July 15, 2007 that appears to contain my countersignature and the date of "5-26-05." The personal services contract was addressed to me at my home in Washington, D.C. I was not represented by an attorney nor was I advised by CBS to consult with an attorney. I have no education past the 12th grade, and did not understand that these agreements could be used as a weapon to force me to stay at WPGC for a below market wage or to leave my home.

7.       I recall receiving a letter last year, in late April or May, from Jay Stevens of WPGC. The date of this letter is April 27, 2006. A copy is attached to this Declaration.

8.       When I read the letter, it didn't make sense to me. It referred to an agreement dated May 26, 2006, which was not familiar to me.

9.       The April 27 letter also said that it was exercising an option. Because I didn't want to be tied up, I didn't sign the letter.

10.       I had worked at WPGC without anything in writing for many years, and I didn't think there was any reason I couldn't continue to work at WPGC, if I wanted, without a written contract.

11.       Some time last year, most likely after I received the April 27 letter from Jay Stevens, my compensation from WPGC was increased to $26,000, which was $3,000 more than what was stated in the personal services contract.

12.       When Jay Stevens left WPGC to go to Radio One, which I think happened in December 2006 or January 2007, Reggie Rouse, a CBS Radio official, also spoke with me about my signing a new agreement with CBS Radio.

13.   During the same time that I was attempting to negotiate a more reasonable deal with WPGC, my attorney, Robert Keene, was having discussions with both Radio One, a competitor of WPGC's, and with representatives of WPGC.  Radio One operates many radio stations throughout the United States.  Although the contract that I eventually signed with Radio One on June 11, 2007 has many important provisions, my primary obligation is to appear as Huggy  on the Tom Joyner Morning Show, a syndicated radio program broadcast Monday through Friday between 6:00 a.m. and 10:00 a.m.  Such appearances as Huggy began on Monday, July 19.  If the defendant is successful in its current application, I will be unable to perform my most important obligation under my contract with Radio One.  Although the Joyner show is syndicated, it is broadcast live from the D.C. area, which is the only area in which Huggy is now widely known.

14.   Under my contract with Radio One, I was paid a signing bonus -- although modest -- that was more than the highest annual compensation offered by WPGC to me for my continued service.  With such signing bonus, I was able to pay off the debts I had accumulated because of the high cost of living in D.C. and my obligations of support, compared to the below market compensation paid to me by WPGC.  My actual annual compensation from Radio One is many times the highest offer made to me by WPGC to persuade me to stay.  In addition, my contract with Radio One provides health insurance for me and my 13-year old daughter.  This is the first time in my life that I and my daughter have had health insurance.  In this regard, I had asked CBS to provide health insurance coverage , but was refused.

15.   If I cannot perform my obligations under my contract with Radio One, I may be forced to leave the only home I have ever known (and my 13-year-old daughter) in an effort to

earn a living. WPGC's efforts, if successful, will unfairly deprive me of the opportunity of a lifetime. My importance to WPGC was measured by WPGC at $865/week.

I declare that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:    Washington, D.C.
          July 19, 2007

_Samuel L. Jones Jr._
SAMUEL L. JONES JR.

C:\Documents and Settings\TeamMember\Local Settings\Temporary Internet Files\Content.IE5\5UR6RVU9\SLJDelcaration3[1].doc

5