ELECTRONICALLY FILED

LEBENSFELD BORKER SUSSMAN & SHARON LLP
2 Penn Plaza, Suite 1980
New York, New York 10121
Tel: (212) 594-2030
Fax: (212) 594-6875

Stephen Sussman (SS-1072)
Victor Rivera Jr. (VR-5693)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SAMUEL L. JONES JR.,                                :
                                                    :    Civil Action No.
                        Plaintiff,                  :    07 CV 5693 (BSJ/AJP)
                                                    :
        -against-                                   :
                                                    :
INFINITY BROADCASTING CORPORATION                   :    PLAINTIFF'S BRIEF IN
OF WASHINGTON, D.C. n/k/a CBS RADIO INC.:            SUPPORT OF HIS MOTION TO
OF WASHINGTON, D.C.,                                :    VACATE OR MODIFY THE
                                                    :    RESTRAINTS IN THE
                        Defendant.                  :    AMENDED PRELIMINARY
------------------------------------------------------------x    INJUNCTION

------------------------------------------------------------x
INFINITY BROADCASTING CORPORATION                   :
OF WASHINGTON, D.C. n/k/a CBS RADIO INC.:
OF WASHINGTON, D.C.,                                :
                                                    :
        Counterclaimant and Third-Party             :
            Plaintiff,                              :
                                                    :
        -against-                                   :
                                                    :
SAMUEL L. JONES JR.,                                :
                                                    :
        Counterclaim Defendant, and                 :
                                                    :
RADIO ONE, INC.,                                    :
                                                    :
        Third-Party Defendant.                      :
------------------------------------------------------------x

**TABLE OF CONTENTS**

**PAGE**

Introduction ................................................................................................1

The Facts Relevant to Consideration of the Motion ..................................2

       Point I.     The Amended Order Should Be
                         Vacated In Its Entirety .................................................5

       Point II      If The Amended Order Is Not
                         Vacated, It Should Be Modified..................................9

Conclusion ................................................................................................11

**Introduction**

1. In its decision, the Court overlooked the unrefuted fact (Tr., at. 27:3-28:5, 29:21-30:9)[1] that the compensation of plaintiff ("Plaintiff" or "Jones") was increased during the period of the so-called renewal of his personal services contract.

- Under settled New York law, duly presented to, but unaddressed by, the Court in its decision, such increase in the terms of Jones' engagement precludes a finding that the personal services contract was renewed either by implication or by course of conduct.

2. <u>Subsequent</u> to the Hearing, plaintiff's representative discovered the envelope in which the April <u>27</u>, 2006 Notice of Renewal ("Notice") was mailed. It was mailed by Certified Mail, Return Receipt Requested, and post-marked, on April <u>28</u>, 2006.

- Having been transmitted by Certified Mail, Return Receipt Requested, Mr. Jones' signature on the Return Receipt, together with proof of mailing on April <u>28</u>, 2006, should have been in the possession of CBS Radio.

- Although the Court declined to rule on the timeliness of the Notice (Tr., at 82), its having been mailed indisputedly past the deadline, coupled with the unambiguous language in such contract concerning the date and manner of exercise, makes reliance by defendant ("CBS Radio") and the Court on the two cases cited by the Court in its decision inapposite.

\*   \*   \*

Items 1 and 2 above, under Fed. R. Civ. P. 59 (e) and 60 (b), warrant <u>vacatur</u> of the July 27, 2007 Amended Order of Preliminary Injunction (the "Amended Order").

---

[1] References to "Tr." are to the pages and lines of the transcript of the preliminary injunction hearing held on July 23, 2007 (the "Hearing").

3. If the Court declines to vacate the Order in its entirety, events <u>subsequent</u> to date of the Amended Order plainly justify modification thereof (under the above-cited provisions of the Federal Rules) so as to provide the particularity mandated by Fed. R. Civ. P. 65(d).

## The Facts Relevant to Consideration of the Motion

First, as above noted, Jones' compensation during the "renewal period" was increased from $23,000 to $26,000. Tr., at 27:3-28:5, 29:21 - 30:9; Jones Decl., ¶11.[2]

Second, the Court's reference to the Notice as possibly untimely[3] should be clarified and a finding entered on the timeliness of the Notice. Regardless of whether the actual date of mailing the Notice was known or unknown to CBS Radio as of the hearing date, on July 26, 2007, three days after the hearing, Plaintiff's adviser and manager, Everestus Thomas, following prior unsuccessful efforts, located the original Notice in Plaintiff's apartment. Thomas Decl. ¶ 4.[4] Such letter was in its original envelope and was transmitted by Certified Mail, Return Receipt Requested. Such envelope was postmarked April <u>28</u>, 2007. Thomas Decl., ¶ 4; Ex. 2 thereto. Unless CBS Radio, like Plaintiff, misplaced the signed Certified Mail Receipt, together with proof of mailing, there can be no justification for the parties' having devoted substantial time and resources to a non-issue, *i.e.*, whether the Notice was timely. It plainly wasn't. <u>Period!</u> And the discussion of this non-issue was, at best, diversionary.

\*   \*   \*

---

[2] Reference to the "Jones Decl." is to the Declaration of Samuel L. Jones Jr., executed July 19, 2007, submitted in opposition to CBS Radio's motion for injunctive relief.

[3] "I find that <u>even if</u> the April 27th notice was untimely by a day," Tr., at 82 (emphasis added).

[4] Reference to the "Thomas Decl." is to the Declaration of Everestus Thomas, executed August 9, 2007, submitted simultaneously herewith.

2

The scope and language of the Order have been at issue since the Court's original ruling. Following the Court's initial ruling, Plaintiff suggested, simply, that "if [the Court] were to enjoin Jones from appearing as Huggy Lowdown on the station, that would accomplish Your Honor's purpose." Tr. at 88.[5] Following the entry of the initial written Order on July 24, 2007, the Court, on July 25, 2007, in an Order of such dates suggested certain modified language, concerning which comments from the parties were solicited. Comments were given, resulting in the Amended Order that reads in relevant part as follows:

> Pursuant to Federal Rule of Civil Procedure 65(b), Jones and Radio One, and all those acting in concert or participation with them, are preliminary enjoined, until May 26, 2008, from using the HUGGY LOWDOWN mark on any radio broadcast transmitted within the Washington, D.C. Total Survey Area, as defined by the Arbitron ratings service, or from using the HUGGY LOWDOWN mark in any media to promote directly or indirectly any such radio broadcast within the Washington, D.C. Total Survey Area.

In adopting such language, the Court rejected the language suggested by Jones, which, after the restraints in paragraph 1, would have provided as follows:

> 2.   Nothing in the foregoing decretal paragraph is intended to enjoin Jones and Radio One, and those acting in concert or participation with them, from (i) using the HUGGY LOWDOWN mark in broadcasts that are not transmitted to the Washington, D.C. Total Survey Area, (ii) the use of such mark in connection with live performances by Jones in clubs and other venues, including within the Washington, D.C. Total Survey Area, and (iii) the promotion of the HUGGY LOWDOWN mark in connection with live performances by Jones.

Events occurring between August 2 and August 9 demonstrate the necessity for modification of the Amended Order. The Court's attention is directed to the accompanying

---

[5] Radio One has separately moved to dismiss the action, and vacate the Order, as against it on the basis of lack of personal jurisdiction.

3

Declarations of Stanley G. Richards ("Richards Decl.") and Victor Rivera Jr. ("Rivera Decl.") and the exhibits thereto.

Mr. Richards is the President of The Richards Group ("TRG") and of Positive Black Men Coalition ("PBMC"). The former is an event planning group and the latter is an entertainment organization that, for the past thirteen years, has provided upscale entertainment events in the Washington, D.C. metropolitan area. At such events, TRG and PBMC select a charitable organization and donate a portion of the proceeds to such organization. Richards Decl., ¶ 1.

Approximately six months ago, Richards and Thomas made arrangements to book the Hyatt Regency Theatre in Crystal City, Virginia, a suburb of Washington, D.C., for a comedy show to be headlined by Huggy Lowdown. As part of such arrangement, a contract with the venue was signed and deposit was made. Id., ¶ 2.

Typically, during the 3-week period prior to a live show, an extensive promotional campaign is run. The "Huggy Lowdown Comedy Throwdown" (the "Comedy Show") is scheduled for Saturday, September 8, 2007 at the Hyatt Regency Crystal City. The promotional campaign, which should begin by August 11, 2007, consists of flyers, newspaper advertisements and, most importantly, radio promotions. Id., ¶ 3.

On August 2, 2007, WPGC -- affiliated with CBS Radio -- was asked to place paid advertisements for the Comedy Show on such station. Significantly, according to the promoters, WPGC and WMMJ (operated by Radio One) are the only two radio stations in metropolitan Washington capable of reaching the Comedy Show's intended audience. WPGC declined to accept such paid advertisments. Id., ¶¶ 4-5, Ex. 1 thereto.

4

After WPGC declined to accept such promotional materials, Radio One was asked to promote the Comedy Show scheduled for September 8. The promos on Radio One for such show would consist of the following:

- promos for the actual show and after-party, including "winning tickets" to the Comedy Show;

- mentions -- "come see Huggy Lowdown at the Hyatt Regency Crystal City";

- sound bites of Huggy doing jokes - which would not contain reference to either the name Huggy Lowdown or reference to (or the voice of) any other person, such as Tom Joyner.

CBS Radio, through its counsel, was asked to approve of such paid advertisements. The response was that CBS Radio "reserve[d] [its] rights to enforce the injunction." Id., ¶ 6. Rivera Decl., ¶¶1-2; Exhibit 3 thereto.

Such response leaves plaintiff, Radio One, TRG and PBMC in a state of limbo. If Radio One airs the promotions, it may be subject to "enforcement" proceedings. Without such radio promotion, the long-scheduled Comedy Show will most certainly be a financial debacle, and personal appearances by Huggy Lowdown -- at least those sponsored by PBMC and TRG organization -- will be at an end. Richards Decl. ¶7; Thomas Decl., ¶3.

**I.
THE AMENDED ORDER SHOULD BE
VACATED IN ITS ENTIRETY**

We are mindful of the burden we must bear under both Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b) to vacate the Amended Order.

5

> A motion to alter or amend judgment under Rule 59(e) is discretionary with the court and need not be granted unless the Court finds that there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Rule 59(e) motions to alter or amend judgment are "not to be used to relitigate matters already argued and disposed of; they are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law." (Rule 59(e) motion may not be used to "relitigate old matters, or to raise new arguments or present evidence that could have been raised prior to the entry of judgment."). Such motions are "disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances."

Long v. U.S. Depart. of Justice, 479 F. Supp.2d 23, 25-6 (D.D.C. 2007) (internal citations omitted).

Although the standards for relief under FRCP 60(b) -- here subdivisions (2) and (6) are both applicable -- are equally stringent, courts may reconsider an earlier opinion if "new evidence [has become available], or [there is a] need to correct a clear error or prevent manifest injustice"). Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986), *cert. denied*, 480 U.S. 908 (1987) (citations and quotation marks omitted). Furthermore, "it is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship[.]"; see also, Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

Apart from the unnecessary diversion created by the assertion of the timelines of the Notice,[6] the Court's failure to consider the increase in Jones' compensation by more then 10% (from $23,000 to $26,000) during the "renewal period" mandates reconsideration of the

---

[6] The Court characterized such matter as "[t]he parties' clear and main dispute." Tr. at 82.

6

underpinnings of its ruling.[7]

Such change in compensation, under the authorities set forth in Plaintiff's Memorandum in Opposition to CBS Radio's Motion for a Preliminary Injunction, disqualifies Jones' continued performances past May 26, 2006 from constituting a course of conduct sufficient to revise the expired personal services agreement. See, e.g., L.M. Rabinowitz & Co. v. Dasher, 82 N.Y.S.2d 431, 441 (Sup. Ct. N.Y. Co. 1948); Bessette v. Niles, 23 A.D.3d 999, 803 N.Y.S.2d 837 (4th Dep't 2005); Martin v. Campanero, 156 F.2d 127, 129 (2d Cir. 1946). Moreover, given the fact that the 1-year post-termination continuation of the License Agreement did not expire until May 25, 2007 (one year after the expiration of the personal services agreement), Jones' continued appearances on the Donnie Simpson Morning Show should be accorded little, if any, significance.

The Court's (and CBS Radio's) reliance on Bank of New York and Watts[8] to find that CBS Radio had shown a likelihood of success in establishing an implied-in-fact contract is misplaced. In Bank of New York, the lateness in exercising the option was by mistake on account of ambiguity in the sublease concerning the date of commencement 114 A.D.2d at 433, 494 N.Y.S.2d at 347. The provisions in the personal services agreement and License Agreement are in no way ambiguous with regard to the time and manner of exercise. See James Pinto Photograph, Ltd. v. Sheppard, 13 Misc.2d 292,297, 822 N.Y.S.2d 401, 405 (Civ. Ct. Kings Co., 2006), (distinguishing Bank of New York on the basis of the ambiguity present in Bank of New

---

[7] Indeed even if, as CBS Radio undoubtedly will urge, the instant motion is a "disguised" motion for reargument, the failure by the Court to address such argument merits reconsideration and vacatur of the Amended Order. See Caleb & Co. v. E.I. DuPont DeNemours & Co., 624 F.Supp. 747, 748 (S.D.N.Y. 1985) ("Since the July 26 opinion does not, either explicitly or implicitly, address the significance of the different language used in the summary of the prospectus, the body thereof, and the press releases, the motion for reargument is granted.")

[8] Bank of New York v. Ulster Heights, 114 A D.2d 4-31 494; N.Y.S. 2d 345 (2d Dep't. 1985); Watts v. Columbia Artists Mgt., 188 A.D.2d 799, 591 N.Y.S. 2d 234 (3d Dep't. 1992).

York, noting "[u]nder the circumstances here, therefore, where the lease clearly specifies the time and manner in which notice of renewal is to be given, and that notice is not given before the expiration of the lease, equitable considerations cannot serve to revive and renew Respondents' tenancy."

Watts implied a contract, but only because for two years after the expiration of the written contract the party seeking to avoid an implied contract continued to accept the other party's services and pay the other party commissions precisely in accordance with the terms of the written contract. 188 A.D.2d at 801, 591 N.Y.S.2d at 236. Although Jones continued to work for CBS Radio after the expiration of the personal services contract (as he had for many years prior to the commencement of such contract), he did not do so in accordance with the terms of the written contract, but at a salary substantially different. See Martin v. Campanaro, supra. 156 F.2d at 129-130.

The Amended Order -- which is the functional equivalent of (at least) the ultimate relief sought by CBS Radio as against Jones -- cannot be sustained on this record. Given (a) Jones' increase in compensation of more than 10% during the "renewal term," (2) the fact that Jones did nothing different after May 26, 2006 than he had prior to May 26, 2005, (3) that the License Agreement, by its terms, extended until May 25, 2007, and (4) Jones expended more than 4 months in negotiations with Radio One, a finding of likelihood of success on the merits or that CBS Radio "has established that serious questions exist going to the merits of the case and that these questions are fair grounds for litigation" (Tr. at 85) cannot be sustained.

We would note that even if -- contrary to fact -- CBS Radio had established the "existence of serious questions," etc., the balance of hardships cannot possibly favor CBS Radio.

8

First, CBS Radio, notwithstanding its suggestions to the contrary, is not at all likely to use the mark HUGGY LOWDOWN on its broadcasts. Doing so would run the risk that CBS Radio will have engaged in trademark infringement -- given the possibility (or likelihood) that a jury will <u>not</u> find in CBS Radio's favor. On the other hand, in consequence of the issuance of the restraints, Jones is subject to the loss of his contract with Radio One <u>and</u> to restraints far broader than those set forth in the License Agreement; and, unless the Amended Order is modified, as discussed below, the Court's observation that "Jones can also continue to use this [HUGGY LOWDOWN] mark in stand-up comedy shows" (Tr., at 86) will become illusory, at best.

## II

### IF THE AMENDED ORDER IS NOT VACATED, IT SHOULD BE MODIFIED.

The Amended Order does not comply with the mandate of particularity required by Fed. R. Civ. P. 65(d). As noted above, we addressed such point in our various submissions to the Court prior to the entry of the Amended Order, and we see no purpose in reiterating such arguments. However, events in the real world, occurring between August 2 and August 9, cry out for immediate modification of such Order.

In particular, a long-planned personal appearance by Jones as Huggy Lowdown at the Hyatt Regency in Crystal City, Virginia, a suburb of Washington, D.C., is in jeopardy of becoming a financial debacle because (a) CBS Radio refuses to accept paid advertisements for the show (Richards Decl., ¶5; Ex. 1 thereto), and (2) Radio One's efforts to obtain approval of such advertisements from CBS Radio have been met with a "reservation of rights to enforce the injunction."

9

According to the promoters, only WPGC (on CBS Radio) and WMMJ (on Radio One) are capable of reaching the intended audience in the metropolitan, Washington, D.C. area. Richards Decl., ¶4; Thomas Decl., ¶2. One of such stations (WPGC) flatly refuses to air the promotions. The other (WMMJ) can do so only if it were willing --- and it is not --- to engage in further, costly, litigation as to whether such paid promotions would be violative of the Amended Order. The Amended Order, frankly, is ambiguous on the subject. And that is not fair to the promoters (or to the charity that will benefit from such personal appearance),[9] nor is it fair to Jones who, contrary to the Court's observation, finds his ability to appear as Huggy Lowdown "in stand-up comedy shows" (Tr., at 86) non-existent under the overbroad provisions of the Amended Order. Indeed, it is plain that unless the Amended Order is clarified, as requested above (at 3), Jones will be prevented from any personal appearances in the one region he is popular throughout the time period the restraints remain in effect. Richards Decl. ¶4; Thomas Decl., ¶3.

Such a result is inequitable and could not possibly have been intended by this Court in the Amended Order.

### Conclusion

For all of the foregoing reasons, Jones' motion to vacate the restraints in the Amended Order should be granted. If and only if the Court does not vacate the restraints in their entirety, the Amended Order should be modified by the addition of the following language:

> Nothing in the foregoing decretal paragraph is intended to enjoin
> Jones and Radio One, and those acting in concert or participation
> with them, from (i) using the HUGGY LOWDOWN mark in
> broadcasts that are not transmitted to the Washington, D.C. Total

---

[9] Richards Decl., ¶ 1.

Survey Area, (ii) the use of such mark in connection with live performances by Jones in clubs and other venues, including within the Washington, D.C. Total Survey Area, and (iii) the promotion of the HUGGY LOWDOWN mark in connection with live performances by Jones.

Dated: New York, New York
August 10, 2007

        Respectfully Submitted,

        **LEBENSFELD BORKER SUSSMAN & SHARON LLP**

        By: /s/ Victor Rivera Jr.
            Victor Rivera Jr. (VR-5693)
            2 Penn Plaza, Suite 1980
            New York, New York 10121
            Tel: (212) 594-2030
            Fax: (212) 594-6875
            Attorneys for Plaintiff

Of Counsel:
    Stephen Sussman