Bruce P. Keller (BK-9300)                    ELECTRONICALLY FILED
Jeremy Feigelson (JF-4963)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendant, Counterclaimant and Third-Party Plaintiff*
*Infinity Broadcasting Corporation of Washington, D.C. n/k/a*
*CBS Radio Inc. of Washington, D.C.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

SAMUEL L. JONES JR.,                              :

           Plaintiff,                        :

  -against-                                       :

INFINITY BROADCASTING CORPORATION OF              :
WASHINGTON, D.C. n/k/a CBS RADIO INC. OF
WASHINGTON, D.C.,                                 :

       Defendant.                             :

-----------------------------------------------------------------------x

INFINITY BROADCASTING CORPORATION OF              :
WASHINGTON, D.C. n/k/a CBS RADIO INC. OF
WASHINGTON, D.C.,                                 :

     Counterclaimant and Third-Party Plaintiff,   :

   -against-                                     :

SAMUEL L. JONES JR.,                              :

     Counterclaim Defendant, and             :

RADIO ONE, INC.,                                  :

     Third-Party Defendant.                  x

No. 07 Civ. 5693 (BSJ) (AJP)

**MEMORANDUM OF LAW (1) IN SUPPORT OF MOTION FOR FINDING OF CONTEMPT, (2) IN OPPOSITION TO MOTION TO VACATE OR MODIFY AMENDED PRELIMINARY INJUNCTION AND (3) IN OPPOSITION TO MOTION TO DISMISS AND TO MODIFY AMENDED PRELIMINARY INJUNCTION**

## Table of Contents

Table of Authorities ................................................................................................................ ii

Preliminary Statement ............................................................................................................1

Argument ...............................................................................................................................3

I.      RADIO ONE AND JONES SHOULD BE HELD IN CONTEMPT .....................3

II.     JONES' MOTION TO AMEND THE INJUNCTION SHOULD BE
        DENIED.................................................................................................................7

        A.      The Personal Appearance That Prompted The Motion Has Been
                Cancelled....................................................................................................7

        B.      The Issues Jones Raises Were Considered Before And Cannot
                Reasonably Be Expected To Alter The Court's Decision ...........................8

III.    RADIO ONE'S MOTION SHOULD BE DENIED .............................................10

        A.      Radio One Is Properly Named As An Entity Covered By The
                Injunction .................................................................................................10

        B.      Radio One Is Subject To Personal Jurisdiction In New York ..................12

                1.      Radio One Is Subject To Long-Arm Jurisdiction Because It
                        Has Directed And Financed This New York Litigation. ...............12

                2.      Radio One's Multiple Business Contacts In New York
                        State Also Subject It To General Jurisdiction................................15

Conclusion ...........................................................................................................................16

i

## Table of Authorities

### FEDERAL CASES

*A.C.L.U. v. Department of Defense*,
    406 F. Supp. 2d 330 (S.D.N.Y. 2005)........................................................................10

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
    87 F. Supp. 2d 281 (S.D.N.Y. 2000)..........................................................................6

*Ainbinder v. Potter*,
    282 F. Supp. 2d 180 (S.D.N.Y. 2003)......................................................................14

*Aqua Grill, Inc. v. S.T.F.B. Corp.*,
    96 Civ. 4780 KMW, 1997 WL 563305 (S.D.N.Y. Sept. 8, 1997)...................................6

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..............................................................................................14

*Calder v. Jones*,
    465 U.S. 783 (1984) ..............................................................................................15

*Chere Amie, Inc. v. Windstar Apparel Corp.*,
    175 F. Supp. 2d 562 (S.D.N.Y. 2001).....................................................................6-7

*Cutco Industries, Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986)...................................................................................12

*Estate of Greene v. Glucksman*,
    669 F. Supp. 63 (S.D.N.Y. 1987)............................................................................11

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ..............................................................................................15

*Kelly v. MD Buyline, Inc.*,
    2 F. Supp. 2d 420 (S.D.N.Y. 1998).....................................................................14, 15

*Martin v. Campanaro*,
    156 F.2d 127 (2d Cir. 1946)....................................................................................9

*National Basketball Association v. Design Management Consultant, Inc.*,
    289 F. Supp. 2d 373 (S.D.N.Y. 2006)........................................................................5

*Nemaizer v. Baker*,
   793 F.2d 58 (2d Cir. 1986) ........................................................................10

*Parrish v. Sollecito*,
   253 F. Supp. 2d 713 (S.D.N.Y. 2003) ...........................................................8

*Teachers Insurance & Annuity Association of America v. Butler*,
   592 F. Supp. 1097 (S.D.N.Y. 1984) .............................................................13

*Time Warner Cable, Inc. v. DirecTV, Inc.*,
   No. 07-0488, 2007 U.S. App. LEXIS 18846 (2d Cir. Aug. 9, 2001) ..............4

*Waffenschmidt v. Mackay*,
   763 F.2d 711 (5th Cir. 1985) ................................................................. 10-11

*Weitzman v. Stein*,
   98 F.3d 717 (2d Cir. 1996) ...........................................................................6

*White v. Samsung Electronics America, Inc.*,
   971 F.2d 1395 (9th Cir. 1992) ......................................................................4

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ....................................................................................14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969) ....................................................................................11

## STATE CASES

*Bessette v. Niles*,
   803 N.Y.S.2d 837 (N.Y. App. Div. 2005)......................................................9

*Colucci & Umans v. 1 Mark, Inc.*,
   637 N.Y.S.2d 705 (N.Y. App. Div. 1996)....................................................13

*Fischbarg v. Doucet*,
   832 N.Y.S.2d 164 (N.Y. App. Div. 2007)....................................................13

*Flick v. Stewart-Warner Corp.*,
   555 N.E.2d 907 (N.Y. 1990) .......................................................................15

*L.M. Rabinowitz & Co. v. Dasher*,
  82 N.Y.S.2d 431 (N.Y. Sup. Ct. 1948) ............................................................................9

*McGowan v. Smith*,
  419 N.E.2d 321 (N.Y. 1981) ................................................................................ 13-14

## FEDERAL STATUTES & RULES

18 U.S.C. § 401 ..............................................................................................................5

Fed. R. Civ. P. 59 ........................................................................................................3, 8

Fed. R. Civ. P. 60 ......................................................................................................3, 10

## STATE STATUTES

N.Y. C.P.L.R. § 301 ......................................................................................................15

N.Y. C.P.L.R. § 302 ........................................................................................12, 13, 14

Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D.C. ("CBS Radio") submits this memorandum (*1*) in support of its motion for contempt against both Samuel L. Jones Jr. and Radio One, Inc. ("Radio One"), (*2*) in opposition to Jones' motion to vacate or modify the Amended Preliminary Injunction (the "Injunction"), and (*3*) in opposition to the motion of Radio One to dismiss the action against it or modify the Injunction for lack of jurisdiction.

### Preliminary Statement

CBS Radio has brought this motion for a finding of contempt because Jones and Radio One continue to violate the Injunction. The Court ruled from the bench on July 23, 2007 that Jones and Radio One were not to use the "HUGGY LOWDOWN" trademark in any way in connection with Washington, D.C.-area radio broadcasts, and emphasized that its order was effective immediately. Yet Jones and Radio One deliberately violated the Injunction the very next day, and have done so repeatedly since then:

- On July 24, Jones was promoted by Radio One, both on-air and online, as "the Celebrity Snitch formerly known as HUGGY LOWDOWN." Declaration of Bruce P. Keller, August 23, 2007 ("Keller 8/23 Decl."), Ex. 1.

- Having thus established who the Celebrity Snitch "formerly" was, Radio One still promotes Jones daily as "the Celebrity Snitch, formerly known as [blank]," a tactic that specifically communicates the mark HUGGY LOWDOWN to listeners. *See id.* ¶ 7, Ex. 4.

- Jones and Radio One continue to use the mark expressly and to communicate it in other ways. On August 8, Tom Joyner referred to Jones on-air as "HUGGY." *Id.* Ex. 4. On August 16, Jones referred to his home as the "Hug Shack." *Id.* Ex. 5. August 17, Tom Joyner said Jones was broadcasting "live from the Hug Shack" and called him the "Hugster." *Id.* Exs. 6, 7. August 20, Tom Joyner again referred to the "Hug Shack" and

the "Hugster."  Keller 8/23 Decl. Ex. 8.  Joyner repeatedly calls Jones "HU---," but then theatrically stops short once the first syllable has been enunciated.  *Id*. Exs. 3, 6, 7.

- Each of these violations is repeated online when Radio One uploads the Tom Joyner program to the website of its station WMMJ-FM.  *See* July 24 Tr. at 3.  There Radio One "bleeped" the references to "Hug Shack" and "Hugster" from the August 17 program, confirming that it knows any variations of HUGGY LOWDOWN are inexcusable violations.  *Id*. Ex. 6.

- WMMJ's website also prominently states that the Celebrity Snitch "is now on" Tom Joyner's show, which can only be meant as a reminder that the Celebrity Snitch is the same HUGGY LOWDOWN character that used to be on WPGC.  *Id*. Ex. 15.

- Radio One also uploads Joyner's program to blackamericaweb.com, a website owned by Reach Media, in which Tom Joyner and Radio One are both partners.  There, the August 17 Jones appearance was available in its original, unedited form.  *Id*. Ex. 7.

At this point, CBS Radio has no choice but to seek contempt sanctions to ensure compliance with the injunction.  *See* pp. 3-6, *infra*.

The Court should deny Jones' motion to vacate or modify the Injunction.  The purportedly long-scheduled live appearance by Jones that prompted the motion has been cancelled, rendering the motion moot.  That the motion actually was brought to gut the injunction, not merely amend it, is shown by Jones' proposed promotion for that live appearance.  That copy explicitly linked Jones' past use of the HUGGY LOWDOWN character to his appearances on his new on-air home, WMMJ—thus doing exactly what the Injunction forbids.  When CBS Radio responded with copy that would not have promoted Radio One stations or programs, the appearance was cancelled, mooting Jones' motion.  Even if considered on the merits, Jones' motion does not provide the Court with

2

any basis for modifying or vacating the Injunction and it plainly fails under Rule 59(e) and 60(b).  *See* pp. 7-10, *infra*.

The Court also should deny Radio One's motion to modify the Injunction to delete its name, or to dismiss it from this case, for lack of personal jurisdiction.  Radio One is appropriately bound by and named in the Injunction, regardless of its contentions about lack of jurisdiction, because it is acting in concert with Jones and is fully aware of the Court's order.  Radio One also is subject to personal jurisdiction in New York, because it has initiated, financed and directed this litigation from the start; it transmits the Tom Joyner radio program into New York; and it has numerous other connections to this state.  *See* pp. 10-15, *infra*.

<u>**Argument**</u>

## I.    RADIO ONE AND JONES SHOULD BE HELD IN CONTEMPT

The Court issued its crystal-clear Injunction from the bench on July 23, with Radio One representatives present in the courtroom.  The Injunction precluded

> Jones and Radio One and all those acting in concert or
> participation with them . . . from using the HUGGY LOWDOWN
> mark in any way in connection with any radio broadcasts or for
> promotion . . .

July 23 Tr. at 87-88; *see id*. at 92 (order made effective immediately).

The very next day, Jones and Radio One began what has become a pattern of textbook contempt.  On July 24, Radio One billed Jones on-air as "the Celebrity Snitch formerly known as HUGGY LOWDOWN."  Radio One and Jones promptly were put on notice that the July 24 ruse was an obvious violation, July 24 Tr. at 7-8, 10-11, and

subsequently were warned of still other conduct that would violate the Injunction. August 14 Tr. at 19.

One might think Jones and Radio One would have then steered clear of anything remotely resembling a use of "HUGGY LOWDOWN." They have not. Jones was expressly identified by Radio One and Tom Joyner as "Huggy, Huggy, Huggy" during an on-air appearance on August 8, 2007. On August 16 and 17, Jones and Radio One were still at it, using on-air references to the "Hug Shack" as the name of Jones' home and calling him the "Hugster."

Perhaps most cynically, Radio One's Tom Joyner also has repeatedly flouted the Injunction by dramatically starting to say "Huggy" but stopping after "Hu---." Keller 8/23 Decl. Exs. 3, 6, 7. There is no doubt that this evokes the HUGGY LOWDOWN mark and therefore violates the Injunction. Even the "context" of unspoken words can "necessarily imply a . . . message" and that message can be—and in this case should be—deemed communicated as a matter of law. *Time Warner Cable, Inc. v. DirecTV, Inc.*, No. 07-0468, 2007 U.S. App. LEXIS 18846, at *30 (2d Cir. Aug. 9, 2007) (advertisement can be literally false without an explicit false assertion); *see also White v. Samsung Elec. Am., Inc.*, 971 F.2d 1395, 1399 (9th Cir. 1992) (describing hypothetical advertisement, the elements of which, taken together "lead to the only conclusion that any sports viewer who has . . . a discernible pulse . . . would reach: the ad is about Michael Jordan" even though Jordan's name is never spoken).

Here common sense dictates that, as a matter of law, Radio One is linking Jones to the HUGGY LOWDOWN mark and exploiting the goodwill built up in that mark

during Jones' years with CBS Radio. The Court may recall opposing counsel's suggestion that Radio One's use of the phrase "formerly known as HUGGY LOWDOWN" was somehow a "fair use." July 24 Tr. at 6. It is more accurate to characterize it as a set-up. Radio One now directly communicates to listeners that they should fill in the blank following "formerly known as" with the very mark that the Court enjoined Radio One from using directly. *See also* August 14 Tr. at 3.

Each of the acts described above thus constitutes a violation of the Injunction and civil contempt. *See* 18 U.S.C. § 401; *Nat'l Basketball Ass'n v. Design Mgmt. Consultant, Inc.*, 289 F. Supp. 2d 373, 376 (S.D.N.Y. 2006) (finding defendant in contempt for sales of infringing merchandise after notice of preliminary injunction). CBS Radio has proven all three required elements of contempt, *id.*:

(1)    *An unambiguous order*: The Injunction could not be clearer: No uses of the HUGGY LOWDOWN mark are permitted in connection with D.C.-area radio broadcasts or promotions. The Injunction contains no carve-out for indirect or implied uses. Radio One and Jones simply cannot use "Huggy" or "Lowdown," or any part of either word or any other phrase that causes listeners to link the HUGGY LOWDOWN mark to Jones' current WMMJ appearances.

(2)    *Clear and convincing proof of noncompliance*: The evidence of Radio One's and Jones' repeated violations is beyond dispute. Radio One and Jones continue to use the mark as described above despite (*a*) extensive post-Injunction contact with the Court, including the Court's own request that the parties raise any concerns they have over the scope of the order, July 24 Tr. at 10-11, (*b*) CBS Radio's express reminder that the license agreement prohibits use of the mark "in any manner" that conflicts with its exclusivity (Keller 8/23 Decl. Ex. 9) and (*c*) two conferences on the subject. *See* July 24 Tr. at 6-8; August 14 Tr. at 15-16.

(3) *Failure to reasonably and diligently comply with the Injunction*: The sheer number and pattern of violations proves that these are not mistakes, but a complete failure of reasonable efforts to comply. Far from attempting compliance, Radio One and Jones have engaged in willful non-compliance.

The element of willfulness, though not a prerequisite to a finding of contempt, supports an award of attorneys' fees here. *See Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (attorneys' fees follow nearly automatically upon a finding of willful contempt). Courts repeatedly have elected to award fees where defendants have engaged in the types of games played by Radio One and Jones. *See, e.g.*, *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 296-97 (S.D.N.Y. 2000) (granting attorneys' fees where Defendant "should have had sufficient cause to doubt" the legality of its conduct) (internal quotations omitted).

Less rigorous efforts having failed, it is now clear that civil contempt fines are required to force Radio One and Jones to comply with the Injunction. *See, e.g.*, *Aqua Grill, Inc. v. S.T.F.B. Corp.*, 96 Civ. 4780 (KMW), 1997 WL 563305, at *6 (S.D.N.Y. Sept. 8, 1997) ("the Court may impose a fine in order to coerce compliance with its order"). CBS Radio proposes that monetary fines of $10,000 be imposed for the three days that Jones and Radio One used the mark "HUGGY LOWDOWN" and the name "Huggy." $5,000 should be imposed for each of the four days on which "Hug Shack," "Hugster," and "Hu---" were used. It also would be appropriate to order that any further uses of "formerly known as . . ." or "is now on" will bear a $10,000 fine. These amounts per day plainly are reasonable. *See, e.g.*, *Chere Amie, Inc. v. Windstar Apparel Corp.*, 175 F. Supp. 2d 562, 567 (S.D.N.Y. 2001) (contemnor to pay $25,000 for past violations

and additional fine of $10,000 "for each day . . . that [defendant] fails to carry out a recall of [its] infringing goods").

## II.    JONES' MOTION TO AMEND THE INJUNCTION SHOULD BE DENIED

### A.    The Personal Appearance That Prompted The Motion Has Been Cancelled

This motion by Jones is moot.  Jones sought to use the HUGGY LOWDOWN mark, including signature "bits," in radio advertising for a planned live event in the D.C. area on September 8.  August 14 Tr. at 14-16.  Yesterday, August 22, CBS Radio learned that the September 8 event has been cancelled, if indeed it was ever really scheduled, because of an alleged inability to draft a satisfactory advertisement.  Keller 8/23 Decl. Ex. 14; August 14 Tr. at 3-8.

Although, without discovery, CBS Radio has not yet been able to explore fully the reasons for the cancellation, it had suspected this event was not the *bona fide* commitment that had been represented to the Court.  August 14 Tr. at 5-10.  Nonetheless, it took Jones' representations to the Court at face value and made good-faith efforts to state its objections to the proposed ad copy, including proposing alternative copy that did not connect the HUGGY LOWDOWN mark to Radio One stations or programs.  August 14 Tr. at 4-5; Keller 8/23 Decl. ¶ 18, Ex. 14.

With the September 8 event now a non-issue, and no other specific proposed usage of HUGGY LOWDOWN before the Court, there is no basis for amending the Injunction.  Just as Jones initially sought an advisory opinion by moving with respect to the September 8 appearance in the absence of actual ad copy, August 14 Tr. at 14, the

motion remains a request for a purely advisory opinion about as yet unplanned future appearances and promotions.

**B.    The Issues Jones Raises Were Considered Before And Cannot Reasonably Be Expected To Alter The Court's Decision**

Even if considered on the merits, Jones' motion does not come close to meeting the stringent standards for obtaining relief under Rule 59(e) of the Federal Rules of Civil Procedure.  Jones must, but cannot, "demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision," or show clear error, manifest injustice, or new evidence.  *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003).  Rule 59(e) relief is employed sparingly, *id.*, and there is no basis for granting it here.

The issue of the increase in compensation, Jones Memorandum, August 10, 2007, at 1, 3, 6-9, already has been litigated and determined.  Jones testified at the hearing that his compensation had been increased from $23,000 to $26,000.  July 23 Tr. at 29-30.  Jones' declaration, submitted in advance of the hearing, also states that Jones' compensation was increased.  Declaration of Samuel L. Jones Jr., July 19, 2007, ¶ 11.  Jones' memorandum of law in opposition to CBS Radio's application for temporary and preliminary relief argued that Jones' compensation was increased.  Pl. Mem., July 20, 2007, at 12, 14.

Not only is the issue plainly not new, but nowhere did Jones offer any evidence that either Jones or CBS Radio considered that modest increase in pay to constitute a

material change in the terms of their agreement.  To the contrary, Jones admitted that he did not act in any way as if the increased compensation somehow left him free to leave WPGC before the renewal year was up.  July 23 Tr. 11-13.

The modest increase in compensation could not reasonably be expected to change the Court's decision.  The Court ruled from the bench that "where the parties conduct their business following the expiration and the agreement in *essentially* the same manner as prior to the expiration, that business conduct can demonstrate the creation of implied-in-fact agreement with *substantially* the same terms and conditions as embodied in the expired written contract."  July 23 Tr. 83 (emphasis added).  The Court thus expressly took account of the fact that the pre- and post-renewal contract terms differed slightly.

Jones likewise cannot show that the Court overlooked controlling law.  The cases he cites now are the same ones he cited during the original round of briefing leading up to the injunction.  *See* Pl. Mem., July 20, 2007, 11-15.  *Bessette v. Niles*, 803 N.Y.S.2d 837 (N.Y. App. Div. 2005), involved parties that had "modified various terms of the written agreement through subsequent verbal agreements."  The only relevance of *Martin v. Campanaro*, 156 F.2d 127 (2d Cir. 1946), was simply that the issue of the creation of a new contract, containing the same provisions as the old, is determined according to an objective test.  Def. Reply Mem., July 21, 2007, 10.  *L.M. Rabinowitz & Co. v. Dasher*, 82 N.Y.S.2d 431 (N.Y. Sup. Ct. 1948)*,* is distinguishable because the court in that case expressly found that the acts of the parties showed that they considered the relationship to be at will, based on a number of factors not present here.  *Id.* at 441.

Jones fares no better under Rule 60(b), which provides for "extraordinary judicial relief" that can be granted "only upon a showing of exceptional circumstances." *A.C.L.U. v. Dep't of Defense*, 406 F. Supp. 2d 330, 332 (S.D.N.Y. 2005) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).  Jones has invoked subsections (b)(2) and (b)(6), which require a showing of "(2) newly discovered evidence . . . or (6) any other reason justifying relief from the operation of the judgment."  Fed. R. Civ. P. 60(b)(2), 60(b)(6).  Here, the only new evidence is that the renewal notice may have been untimely by one more day than Jones previously argued.  *See* Declaration of Everestus Thomas, August 9, 2007, ¶ 4.  The Court already ruled that "the parties continued to perform as if the option was timely exercised."  July 23 Tr. at 82.  That the notice may have been slightly later would not be "effective to change the result of the former ruling," *A.C.L.U.*, 406 F. Supp. 2d at 332, and cannot support relief here.

## III.    RADIO ONE'S MOTION SHOULD BE DENIED

### A.    Radio One Is Properly Named As An Entity Covered By The Injunction

Radio One elevates form over substance when it contends it should not be named in the Injunction.  Even nonparties outside the territorial jurisdiction of a district court are subject to the court's injunctive and contempt powers if they act in concert with a party to the litigation and have actual notice of the court's order.  *See Waffenschmidt v. Mackay*, 763 F.2d 711, 714-16 (5th Cir. 1985) (considering "whether knowing violation of a court's injunction order by the agent of a party who aids and abets that party's violation of the order permits jurisdiction when no other contacts exist with the forum" and

concluding that "such jurisdiction is necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process"); *Estate of Greene v. Glucksman*, 669 F. Supp. 63, 64-65 (S.D.N.Y. 1987) (recognizing *Waffenschmidt* principle).

Radio One had actual notice of the Court's Injunction the moment it was issued based on the presence in the courtroom of Linda Vilardo and Jones. Vilardo is Radio One's Chief Administrative Officer. She is responsible for "keeping [Radio One] going" and "execut[ing] projects" for "Senior Management." July 23 Tr. 54-60. She voluntarily testified in New York at the hearing, as did its employee, Jones. July 23 Tr. at 4-37. Both were in the courtroom when this Court ruled from the bench.

The element of acting in concert with Jones likewise is easily satisfied here. It is beyond dispute that this entire litigation results from a carefully orchestrated joint effort by Radio One and Jones to put him on-air as "HUGGY LOWDOWN," to seek judicial relief that would enable him to do so, and to evade the Court's order once that initial litigation gambit failed. Radio One has done more than actively aid and abet violations of the order by Jones – it directly caused those violations.

Nothing in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969), the only authority cited by Radio One for the deletion of its name, Radio One Mem., August 9, 2007, at 7, supports the motion. *Zenith* holds only that an injunction cannot be enforced by a contempt proceeding against a nonparty, even one with notice of an order, until it is "shown to be in concert or participation" with an enjoined party. *Id*.

Specifically identifying Radio One as an entity within the scope of its order is well within this Court's authority.

**B.    Radio One Is Subject To Personal Jurisdiction In New York**

**1.    Radio One Is Subject To Long-Arm Jurisdiction Because It Has Directed And Financed This New York Litigation.**

Radio One affirmatively selected New York as the forum for this dispute and directed the litigation of the dispute here.  This constitutes transacting business within the state, and CBS Radio's claims arise out of that business activity, thus satisfying the New York long-arm statute.  N.Y. C.P.L.R. § 302(a)(1); *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

Radio One has purposefully transacted business in New York through these actions, individually and collectively:

- Radio One's employment agreement with Jones, dated June 11, 2007 and signed by Vilardo, expressly anticipates this litigation.  It provides that Radio One "shall cause counsel . . . of its selection, at [Radio One]'s sole expense, to represent the interests of [Jones] in any dispute or litigation with [CBS Radio] resulting from [Jones]'s entry into this Agreement and/or relating to [Jones]'s right to license the HUGGY LOWDOWN Trademark to [Radio One]."  July 23 Tr. 17-18, Ex. 4, ¶ 15.1.

- Radio One's employment agreement with Jones required Jones to execute a retainer agreement with the counsel of Radio One's choosing, Sussman, simultaneously with the employment agreement.  *Id.*

- Sussman, at Radio One's sole expense, filed suit against CBS Radio in this Court on June 14, 2007, only three days after Jones and Radio One executed Jones' employment agreement with Radio One.  Declaration of Jeremy Feigelson, July 20, 2007, Ex. 1.

- Radio One has actively participated in this litigation, not only by financing and directing it, but by voluntarily producing its executive Linda Vilardo

12

in New York to testify at the preliminary injunction hearing.  *See* July 23 Tr. 54-60.

Radio One's actions in retaining a New York attorney to litigate here for its benefit fully supports the exercise of personal jurisdiction under section 302(a)(1) of the C.P.L.R.  *See, e.g.*, *Fischbarg v. Doucet*, 832 N.Y.S.2d 164, 167-168 (N.Y. App. Div. 2007) (finding personal jurisdiction over nondomiciliary who never entered the state of New York based on nondomiciliary's retention of a New York attorney to perform services for nondomiciliary's benefit, even where the subject litigation occurred outside of New York state); *Colucci & Umans v. 1 Mark, Inc.*, 637 N.Y.S.2d 705, 705 (N.Y. App. Div. 1996) (finding jurisdiction where non-domiciliary retained New York attorney to represent it in a federal action in New York and participated in the proceeding).

Radio One's selection of counsel for Jones to handle this dispute demonstrates that the lawsuit was instigated for the benefit of Radio One, with its knowledge, consent and control.  July 23 Tr. 59, 77 & Ex. 4 at 11-12.  Jones' declaratory judgment action was part of a series of purposeful activities undertaken "in this State for the benefit of and with the knowledge and consent of" Radio One, under Radio One's control, which makes Jones, at a minimum, Radio One's agent acting within this State.  *Teachers Ins. & Annuity Assoc. of Am. v. Butler*, 592 F. Supp. 1097, 1101 (S.D.N.Y. 1984); N.Y. C.P.L.R. § 302(a) (permitting exercise of jurisdiction over a nondomiciliary based on acts done directly or through an agent).

These are the very acts that give rise to CBS Radio's tort claims against Radio One, providing ample basis for personal jurisdiction.  *See McGowan v. Smith*, 419 N.E.2d

13

321, 323 (N.Y. 1981) (requiring "the existence of some articulable nexus between the business transacted and the cause of action sued upon").  Radio One's tortious interference with Jones' contractual obligations to CBS Radio and other violations of CBS Radio's trademark exclusivity constitute a single course of conduct that began with its hiring of Jones pursuant to an agreement that expressly required Jones to simultaneously retain the Lebensfeld firm in this District for the purpose of filing a lawsuit here.  *See Ainbinder v. Potter*, 282 F. Supp. 2d 180, 187 (S.D.N.Y. 2003) (considering two agreements as one for purposes of § 302(a)(1) where the first agreement provided essential terms for the second and the second agreement was part of the consideration for the first).  In short, Radio One's hiring of a New York attorney to file a lawsuit in New York seeking to declare CBS Radio's License Agreement invalid is unavoidably and substantially related to CBS Radio's claims against Radio One.

Exercise of jurisdiction over Radio One also is consistent with constitutional due process.  *See Kelly v. MD Buyline, Inc.*, 2 F. Supp. 2d 420, 431 (S.D.N.Y. 1998) ("Satisfaction of the section 302(a)(1) criteria will generally meet federal due-process requirements.").  Radio One effectively haled *itself* into this forum, because it had to have reasonably anticipated being subject to the personal jurisdiction of a New York court once it decided to stage-manage a litigation here.  *See id.* at 431-32 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Subjecting Radio One to the jurisdiction of a forum that it has chosen in no way offends traditional notions of fair play and substantial

14

justice. *See id.* at 431 (citing *Calder v. Jones*, 465 U.S. 783, 788 (1984) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

> ### 2.    Radio One's Multiple Business Contacts In New York State Also Subject It To General Jurisdiction.

Radio One is subject to general jurisdiction here as a foreign corporation that has created a constructive presence in the state by doing business in the state. *See Flick v. Stewart-Warner Corp.*, 555 N.E.2d 907, 909 (N.Y. 1990) (discussing N.Y. C.P.L.R. § 301). As the Vilardo Declaration acknowledges, Radio One maintains regular business contacts in New York through its interest in, for example, TVOne, a cable and satellite television network with a sales office in New York. Keller 8/23 Decl. Exs. 10, 11. Radio One also owns Giant Magazine, which is published in New York. *Id.* Exs. 10, 12.

Most importantly, the record shows the Tom Joyner Morning Show is nationally-syndicated and reaches this state. *See* July 23 Tr. 58. According to Radio One's website, that includes being heard daily within this state on WBLK 93.7-FM (Buffalo) and on WPHR 106.9-FM (Syracuse). Keller 8/23 Decl. Ex. 13. Although Radio One claims that "[n]one of the signals from any of Radio One's radio stations can reach, or have been able to reach, New York," Vilardo Decl. ¶ 6, that carefully crafted statement is, at best, confusing. Regardless of whether the WMMJ radio station signal reaches New York, the Tom Joyner program that originates from that station plainly does.

Without discovery, the full extent of Radio One's general contacts with New York is not currently known, but this Court should not allow Radio One's less than candid statements about the reach of its broadcasts to cast doubt about its presence. To

the extent the Court feels that additional facts are necessary to resolve Radio One's

motion, CBS Radio is prepared to take immediate targeted discovery on this issue.

## Conclusion

For the reasons stated above, the Court should (*1*) deny Jones' motion to vacate or

modify the Injunction, (*2*) deny Radio One's motion to dismiss the action against it or

modify the Injunction, and (*3*) grant CBS Radio's application for a finding of contempt.


Dated: New York, New York
       August 23, 2007                       DEBEVOISE & PLIMPTON LLP


                                             By:  ____/s/ Bruce P. Keller_____
                                                   Bruce P. Keller
                                                   Jeremy Feigelson

                                             919 Third Avenue
                                             New York, New York 10022
                                             (212) 909-6000

                                             *Attorneys for Defendant, Counterclaimant,*
                                             *and Third-Party Plaintiff Infinity*
                                             *Broadcasting Corporation of Washington,*
                                             *D.C. n/k/a CBS Radio Inc. of Washington,*
                                             *D.C.*