LEBENSFELD BORKER SUSSMAN & SHARON LLP
2 Penn Plaza, Suite 1980
New York, New York 10121
Tel: (212) 594-2030
Fax: (212) 594-6875

Stephen Sussman (SS-1072)
Victor Rivera Jr. (VR-5693)

*Attorneys for Plaintiff, Samuel L. Jones Jr., and
Third-Party Defendant, Radio One, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SAMUEL L. JONES JR., :
:
Plaintiff, :
: Civil Action No.
-against- : 07 CV 5693 (BSJ/AJP)
:
INFINITY BROADCASTING CORPORATION OF : MEMORANDUM OF LAW
WASHINGTON, D.C. n/k/a CBS RADIO INC. OF : IN OPPOSITION TO
WASHINGTON, D.C., : CBS RADIO'S MOTION
: TO ENTER AN
Defendant. : ORDER OF CONTEMPT
-----------------------------------------------------------x
-----------------------------------------------------------x
INFINITY BROADCASTING CORPORATION :
OF WASHINGTON, D.C. n/k/a CBS RADIO INC. :
OF WASHINGTON, D.C., :
:
Counterclaimant and Third-Party :
Plaintiff, :
:
-against- :
:
SAMUEL L. JONES JR., :
:
Counterclaim Defendant, and :
:
RADIO ONE, INC., :
:
Third-Party Defendant. :
-----------------------------------------------------------x

## TABLE OF CONTENTS

*Page No.*

Table of Authorities ................................................................................................. ii

Preliminary Statement............................................................................................. 1

Statement of Relevant Facts ................................................................................... 1

Argument

    I.    CBS Cannot Sustain Its Burden Of Proving That Radio One Did Not Diligently Attempt To Comply In A Reasonable Manner .................................... 5

    II.    CBS Cannot Satisfy The Other Requisites For A Finding Of Contempt................................. 7

    III.    There Is No Basis For The Coercive Fines Sought By CBS.......... 9

Conclusion ............................................................................................................. 10

## TABLE OF AUTHORITIES

*Cases* *Page No.*

*Chere Amie, Inc. v. Windstar Apparel Corp.*,
 175 F. Supp.2d 562 (S.D.N.Y. 2001)..................................................... 5, 9

*Cohn v. Kramer*,
 136 F.2d 293 (6th Cir. 1943) ..................................................... 8

*Green v. U.S.*,
 356 U.S. 165 (1958)..................................................... 6 n.6

*Independent Living Aids, Inc. v. Maxi-Aids, Inc.*,
 349 F. Supp.2d 509 (E.D.N.Y. 2004) ..................................................... 7

*International Union, United Mine Workers of America v. Bagwell*,
 512 U.S. 821 (1994)..................................................... 6 n.6

*King v. Allied Vision, Ltd.*,
 65 F.3d 1051 (2d Cir. 1995)..................................................... 5, 9

*Levin v. Tiber Holding Corp.*,
 277 F.3d 243 (2d Cir. 2002)..................................................... 5, 7

*Medallic Art. Co., Ltd, v. Novus Marketing, Inc.*,
 2003 WL 22053139 (S.D.N.Y. 2003)..................................................... 7

*Paramedics Electromedicina Comercial, LTDA v.*
*GE Medical Systems Information Technologies, Inc.*,
 369 F.3d 645 (2d Cir. 2004) ..................................................... 5

*Terminal R.R. Assoc. v. U.S.*,
 266 U.S. 17 (1924)..................................................... 8

*Time Warner Cable, Inc. v. DirecTV, Inc.*,
 2007 U.S. App. LEXIS 18846 (2d Cir. Aug. 9, 2007)..................................................... 8

*U.S. v. International Brotherhood of Teamsters, Chauffeurs,*
*Warehousemen and Helpers of America*,
 899 F.2d 143 (2d Cir. 1990)..................................................... 8

*White v. Samsung Electronics America, Inc.*,
 971 F.2d 1395, 1399 (9th Cir. 1992), *reh. denied*, 989 F.2d 1512 (9th Cir. 1993),
 *cert. denied*, 508 U.S. 951 (1993) ..................................................... 8

**Preliminary Statement**

Plaintiff Samuel L. Jones Jr. ("Jones") and third-party defendant Radio One, Inc. ("Radio One") jointly submit this memorandum of law in opposition to the motion by Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D. C. ("CBS") to hold both Jones and Radio One in civil contempt, and to impose significant, coercive fines on them as a result of alleged violations of this Court's July 24 and July 27, 2007 Orders of Preliminary Injunction (collectively, the "Injunction").

As a threshold matter, although the contempt motion -- submitted by CBS as part of its opposition to the motions of Radio One and Jones to dismiss the third-party complaint and to vacate or modify the Injunction -- is directed equally to both Jones and Radio One, only one of the alleged utterances or actions (Keller Decl., ¶¶ 3-12)[1] is attributed to Jones. For the reasons hereinafter set forth, none can be attributed to Radio One which, in all events, indisputedly made diligent efforts to comply with the Injunction in a reasonable matter.

**Statement of Relevant Facts**

Each of the violations alleged by CBS occurred during the broadcast and simulcast of the Tom Joyner Morning Show ("TJMS").[2] Although TJMS is broadcast in the Washington, D.C. metropolitan area by Radio One's WMMJ-FM, Radio One is not the owner of TJMS. Vilardo Decl., ¶ 3.[3]

---

[1] Reference to the "Keller Decl." is to the Declaration of Bruce P. Keller, executed August 23, 2007.

[2] Specifically, CBS calls to the Court's attention utterances during TJMS on July 24, July 26, August 6, August 8, August 16, August 17 and August 20, 2007. Declaration of Bruce P. Keller, dated August 23, 2007.

[3] Reference to the "Vilardo Decl." is to the Declaration of Linda J. Vilardo, Vice President and Chief Administrative Officer of Radio One, executed September 7, 2007

1

TJMS, owned, operated and syndicated by Reach Media, Inc. ("Reach"), is broadcast to over 100 media markets out of Reach's Dallas, Texas studios, and is carried by WMMJ-FM pursuant to a syndication agreement between Radio One and Reach. *Id.,* ¶ 4. Radio One is not responsible for Reach's day-to-day operations or for the daily TJMS content. Rather, such day-to-day content is controlled by TJMS and its staff. *Id.,* ¶ 5. Reach also is the owner of blackamericaweb.com, a website which simulcasts TJMS over the Internet and is solely responsible for the daily content made available on the website. *Id.,* ¶ 6.

Shortly following the Court's decision, during the early evening hours of July 23, 2007, Radio One personnel and Reach personnel discussed the Injunction. Radio One personnel immediately placed certain restrictions into effect. In particular, a widely distributed email transmitted at 10:08 p.m. on July 23 advised and directed as follows:

> Effective immediately, we will refer to "Huggy Low Down" as the "Celebrity Snitch." The segment will remain on the air Monday-Friday. At 6:40am and 8:40am. You will continue to hear his voice on the air, but no reference to [his] name will be used. Please make sure All necessary drops, promos and sweepers are taken off the air asap.

Williams Decl., ¶¶ 6-8,[4] Exh. B.

Radio One, which had not expected the Court to issue the Injunction (Williams Decl., ¶ 6), acted as rapidly as it could in good faith to comply with the Injunction. The only apparent misstep taken by Radio One was its belief that it could, at least initially, refer to its newly-created "Celebrity Snitch" as "formerly known as Huggy Lowdown." Not having seen the written Injunction Order -- which did not issue until the following day -- Radio One was of the view that such limited use -- to introduce its newly created "Celebrity Snitch" -- did not violate the Court's directive. Williams Decl., ¶ 7. Thus, at 10:42 p.m., Kathy Brown, Radio

---

[4] Reference to "Williams Decl." is to the Declaration of Michelle Williams, General Manager for Radio One's radio stations in Washington, D.C. (including WMMJ-FM), executed September 7, 2007.

2

One's D.C. Operations Manager, issued a further directive, as follows:

> I have immediately pulled all promos, drops and sweepers off the air using Huggy Low Down's name. I have forwarded new drops for Tom Joyner to cut in the AM, and to our voice guy Bill Travis to also voice. Starting 2morrow [sic] morning, Huggy will be referred to as the "Celebrity Snitch".
>
> Tom and The "Celebrity Snitch", will reveal why he has the "Celebrity Snitch" name. The feature will remain at 6:40am (the reply) and at 8:40am respectively. The remainder of the week Tom only, will refer to Huggy as "Celebrity Snitch" formerly known as Huggy.
>
> April 24th 2008(Spring Book)[5] we will be able to return on the air as Huggy Low Down, unless otherwise notified by legal.
>
> We will also remove Huggy's name from the website by 12 noon.
>
> If you can think of any other elements I may have forgotten, please let me know.

*Id.*, Exh. B.

On July 24, 2007, following issuance of the Court's written Order and clarification of the use of the Huggy Lowdown name, Radio One promptly advised Reach's senior operations personnel by e-mail to discontinue all such references. By return e-mail from Tanita Myers, Reach's Director of Radio Operations, Radio One was assured that steps had been taken to prevent any recurrences. As stated by Ms. Myers: "I have placed a reminder in the TJMS studio ... so we should be good." Williams Decl., ¶ 9, Exh. C.

Thus, by the end of the day on July 24, 2007, -- the date of the issuance of the initial written Order --, Radio One had taken all reasonable, and apparently effective, steps to insure compliance with the Order of Injunction. Radio One heard nothing further from CBS until 6:38 p.m. on August 8, 2007 when CBS' counsel informed Jones' attorney that Mr. Joyner had referred to Jones as "Huggy" during that morning's broadcast. This message was reiterated a few minutes later by CBS's in-house counsel directly to Ms. Vilardo. Vilardo

---

[5] The mistaken reference to April 24, 2008 is reflective of the initial miscommunication and confusion concerning the Court's ruling in the overnight hours between 9:00 p.m. July 23 and 9:00 a.m. July 24.

Decl., ¶ 7, Exh. A. Ms. Vilardo's prompt response (*id.*) to CBS was as follows:

> I appreciate you bringing this to my attention. I will personally see that the message gets communicated to the folks on the Joyner show. I can assure you that we have instructed folks on the show not to use "Huggy". But there are lots of layers between the legal folks and those on air.

In addition, Radio One (1) promptly removed the Huggy reference made on TJMS nationally, (2) communicated with Reach regarding the incident and (3) was informed by Reach that they would again address the matter with Mr. Joyner. Williams Decl., ¶ 10, Exh. D.

It was not until its motion for contempt -- filed on August 24, in conjunction with its opposition to motions to dismiss CBS' third-party complaint and to vacate or modify the Injunction -- that CBS complained of incidents subsequent to August 8. Such incidents -- which involve Mr. Joyner's references to "Hug shack," "Hugster" and "HU---" and one passing reference by Jones to "Hug shack" -- (Keller Decl., ¶¶ 8-12) -- were apparently not considered by CBS to be sufficiently antagonistic to the provisions of the Injunction so as to require prompt notification by CBS to Radio One or Jones.

In all events, promptly upon learning of CBS' objection to such references, Michele Williams, Radio One's Vice President and General Manager of its Washington, D.C. stations, communicated with Reach's President to again advise of CBS' objections to TJMS content and reiterated that it apparently was CBS' position that reference to any portion of the HUGGY LOWDOWN name during Jones' segments was being treated as a violation of the Injunction. In response, Radio One was advised that Mr. Joyner had not used the HUGGY LOWDOWN name "or any derivations thereof" for some time and that Jones was only being referred to as the "Celebrity Snitch" on TJMS. Williams Decl., ¶ 12 Exh. E.

4

# ARGUMENT

## I.

### CBS CANNOT SUSTAIN ITS BURDEN OF PROVING THAT RADIO ONE DID NOT DILIGENTLY ATTEMPT TO COMPLY IN A REASONABLE MANNER

There can be no quarrel with the general principles governing CBS' contempt motion. In particular, a party can be held in civil contempt for failing to comply with a court's order only if:

> "(1) the order the contemnor failed to comply with is clear and unambiguous;
>
> (2) the proof of noncompliance is clear and convincing, and
>
> (3) the contemnor has not diligently attempted to comply in a reasonable manner."

*Paramedics Electromedicina Comercial, LTDA v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (*quoting King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (emphasis added).

Inasmuch as contempt is a severe sanction, contempt must be found by the higher evidentiary standard of "clear and convincing," instead of the usual preponderance standard that other civil cases use. *Chere Amie, Inc. v. Windstar Apparel Corp.*, 175 F. Supp.2d 562, 565 (S.D.N.Y. 2001). The party making the application for civil contempt has the burden of proof on all these points. *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002).

Although we address below CBS' inability to meet its burden in respect of the first two factors necessary to sustain a finding of contempt, the documentary presentation in Radio One's opposition papers would make unjustifiable any finding that Radio One did not act promptly and diligently to comply with the Injunction. Indeed, the only "evidence" proffered on this point by CBS is its *ipse dixit* that "the sheer number and pattern of violations proves that these are not mistakes, but a complete failure of reasonable efforts to comply." CBS Br. at 6.

5

Not only does such conclusory assertion fall far short of the "clear and convincing proof" necessary to sustain a contempt order, it was made in the absence of access to the multiple, diligent and documented efforts made by Radio One to insure compliance with the Injunction. Moreover, it is far from irrelevant -- but rather directly noteworthy -- that, with the exception of Jones' passing reference to "Hug shack" on August 16, none of the "number and patterns of violations" is attributed to anyone employed by or under the control of Radio One.

As set forth in explicit detail above, and in the accompanying Vilardo and Williams Declarations, TJMS is not owned by Radio One. It is owned, operated and syndicated by Reach. Although Radio One owns 51% of the stock in Reach, Reach has its own board of directors, bank accounts, offices and employees, and most significantly, Radio One does not control any of the day-to-day operations of Reach.

The record reflects that Radio One took prompt and effective action to remove references to HUGGY LOWDOWN on any media within its control and repeatedly sought compliance from Reach. Although it may have taken time for Radio One's entreaties to "set in" with Reach (*see* Williams Decl., ¶ 12, Exh. E), there can be no reasonable criticism of Radio One's attention to, and its steps taken to comply with, the Injunction.[6]

In sum, given the documented record, CBS cannot possibly sustain its burden of showing "by clear and convincing," or for that matter by any competent, evidence that Radio One (or Jones) did not diligently attempt to comply with the Order of Injunction in a reasonable manner.

---

[6] Because Radio One's efforts at compliance are documented, no evidentiary hearing is required to deny CBS' motion. Only if the Court were to find -- and it shouldn't -- that such efforts are not sufficient to show diligent efforts to comply in a reasonable manner would an evidentiary hearing be required. *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 833-34 (1994) (where the facts are disputed, "[a] hearing must be held, witnesses must be called, and evidence must be taken...") (*quoting Green v. U.S.,* 356 U.S. 165, 217 n.33 [1958]).

6

Our discussion of the two other prongs of the test to establish contempt will be considered together.

## II.

### CBS CANNOT SATISFY THE OTHER REQUISITES FOR A FINDING OF CONTEMPT

We cannot overemphasize our position that the points hereinafter discussed need to be considered <u>only if</u> (1) the Court were to find that CBS, by clear and convincing evidence, has established that Radio One did not diligently attempt to comply with the Injunction in a reasonable manner, <u>and</u> (2) the incidents complained concerning remarks by Mr. Joyner can properly be attributed to Radio One. Assuming, *arguendo,* the Court were to so find, contempt nevertheless would not be warranted given the ambiguous nature of the Injunction,[7] and the consequent absence of clear and convincing evidence that such incidents violate the Order.

We begin with a discussion of the governing legal principles. First, an order is clear and unambiguous when it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F. Supp.2d 509, 515 (E.D.N.Y. 2004) (*quoting Medallic Art. Co., Ltd, v. Novus Marketing, Inc.*, 2003 WL 22053139 at *1 (S.D.N.Y. 2003). Further, to be held in contempt, the alleged contemnor would have to be able to determine, from the order alone, precisely what acts are forbidden. *Id.* Under New York law, if there is any ambiguity in the judicial order, it will be construed strictly to the benefit of the alleged contemnor. *Levin*, 277 F.3d at 250. A person may be adjudged in contempt for violating an order only when such order is "clear and unambiguous." Unclear orders do not provide the requisite notice to justify a sanction as serious

---

[7] The only use of the phrase "Huggy Lowdown" occurred on July 24, 2007 prior to the dissemination of the initial written Order of Injunction under the circumstances described above. *See* Williams Decl., ¶¶ 6-8. Following clarification, such use was never thereafter repeated.

7

as contempt. *U.S. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 899 F.2d 143, 146 (2d Cir. 1990).

Putting aside the initial references on July 24 to Jones as the "Celebrity Snitch formerly known as Huggy Lowdown," several of the references purportedly cited by CBS as clear and convincing proof of contempt, such as "Hu---" and "Hug shack," are what CBS would characterize as "implied contempt" (CBS Br. at 4). In support of its contentions, CBS cites *Time Warner Cable, Inc. v. DirecTV, Inc.*, 2007 U.S. App. LEXIS 18846, at *30 (2d Cir. Aug. 9, 2007) and *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1399 (9th Cir. 1992), *reh. denied*, 989 F.2d 1512 (9th Cir. 1993), *cert. denied*, 508 U.S. 951 (1993).

Such reliance, however, is significantly misplaced. CBS seeks to hold Radio One and Jones in <u>contempt</u>, which indisputedly requires "clear and convincing proof." *Time Warner* and *White* involved false advertisements, proof of which does not require the clear and convincing standard involved in contempt proceedings. For at least six decades, it has been settled law that:

> "in contempt proceedings for its enforcement, a decree will not be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought, and the facts found must constitute a plain violation of the decree so read."

*Cohn v. Kramer*, 136 F.2d 293, 295-96 (6th Cir. 1943) (*quoting Terminal R.R. Assoc. v. U.S.*, 266 U.S. 17, 29 [1924]).

Here, virtually all of the remarks claimed by CBS to be contemptuous require interpretation or expansion of the plain language of the Injunction. More than that is required for a contempt finding (even if the remarks by Mr. Joyner could be transformed into remarks made by Radio One <u>and</u> the Court were to somehow find that Radio One did not take reasonable steps to comply).

8

## III.

## THERE IS NO BASIS FOR THE COERCIVE FINES SOUGHT BY CBS

CBS seeks an award of attorneys' fees and coercive fines to address "the types of games played by Radio One and Jones." CBS Br. at 6.

From a factual standpoint, the record is barren of any actions -- much less any "games" -- that properly could be characterized as knowingly violative of the Order. Apart from the initial, and indisputedly isolated, reference on July 24 to Jones as "formerly known as Huggy Lowdown," the record is barren of any, even arguably, inappropriate conduct by Radio One. Instead, the record shows prompt, consistent and persistent efforts by Radio One to require all of its employees and Reach (and thus Mr. Joyner) to comply with the Injunction. The single reference by Jones to "Hug shack" in August 16 would require an expansion by implication of the Injunction, and cannot justify the imposition of coercive fines against Jones, an individual of limited means.

CBS' reliance on the large fines awarded in *Chere Amie, Inc. v. Windstar Apparel Corp.,* is not justified. In *Chere Amie,* the contemptuous acts occurred continuously over may months, involved multiple stores and were found to have been willful. Here, the single act directly attributable to Radio One and/or Jones -- Jones' passing reference to "Hug shack" on August 16 -- consumed less than 2 seconds in a 5-minute performance. It was never before uttered by Jones and no suggestion has been made that Jones ever repeated such reference (without regard to whether it fairly can be considered to violate the Injunction).

Given the uncertainty as to whether reference to "Hug shack" is prohibited by the Injunction, the isolated use of the phrase by Jones and the absence of any other alleged activities properly attributable to Jones, a finding of willfulness, a predicate for an award of attorneys' fees (*King,* 65 F.3d at 1063), cannot possibly be justified.

9

### Conclusion

CBS cannot sustain its substantial burden of proof that Radio One did not diligently attempt to comply with the Injunction in a reasonable manner. As such, and without more, the motion for contempt must be denied. The isolated utterance by Jones -- referring to his home as the "Hug shack -- " cannot form the basis for a finding of contempt or an award of sanctions.

Even if CBS could sustain its burden of showing, by clear and convincing evidence, that Radio One did not act in a diligent and reasonable manner to comply with the Injunction -- a finding that <u>cannot</u> be sustained by this record --, CBS cannot satisfy the other elements necessary to sustain a finding of contempt; and, certainly, this record cannot justify an award of any (much less any coercive) fines or attorneys' fees.

For all the foregoing reasons, and for those set forth in the accompanying Declarations of Linda J. Vilardo and Michelle Williams, CBS' motion for a finding of contempt must be denied.

Dated: New York, New York
      September 7, 2007

                          Respectfully submitted,

                          LEBENSFELD BORKER SUSSMAN & SHARON LLP

                          By: _____
                              Victor Rivera Jr. (VR-5693)
                          2 Penn Plaza, Suite 1980
                          New York, New York 10121
                          Tel: (212) 594-2030
                          Fax: (212) 594-6875

                          Attorneys for Plaintiff, Samuel L. Jones Jr., and
                          Third-Party Defendant, Radio One, Inc.

Of Counsel:

    Stephen Sussman