| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------x<br>SAMUEL L. JONES JR., | ELECTRONICALLY FILED |
| Plaintiff, | No. 07 Civ. 5693 (BSJ) (AJP) |
| -against- | **REPLY DECLARATION OF BRUCE P. KELLER IN FURTHER SUPPORT OF CBS RADIO'S MOTION FOR A FINDING OF CONTEMPT** |
| INFINITY BROADCASTING CORPORATION OF WASHINGTON, D.C. n/k/a CBS RADIO INC. OF WASHINGTON, D.C., | |
| Defendant. | |
| ------------------------------------------------------------------------x | |
| INFINITY BROADCASTING CORPORATION OF WASHINGTON, D.C. n/k/a CBS RADIO INC. OF WASHINGTON, D.C., | |
| Counterclaimant and Third-Party Plaintiff, | |
| -against- | |
| SAMUEL L. JONES JR., | |
| Counterclaim Defendant, and | |
| RADIO ONE, INC., | |
| Third-Party Defendant. | |
| ------------------------------------------------------------------------x | |

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D.C.*

Bruce P. Keller declares:

1. I am a member of the bar of the State of New York, a member of the bar of this Court, and a member of Debevoise & Plimpton LLP, counsel to Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D.C. ("CBS Radio") in this matter. I submit this declaration on personal knowledge in support of CBS Radio's motion for a finding of contempt against Samuel L. Jones Jr. and Radio One, Inc. ("Radio One").

2. True and correct copies of news articles, publicly available on the Internet, demonstrating that Radio One acquired 51% of Reach Media Inc. by purchasing that share from Tom Joyner, are attached as Exhibit A.

3. A true and correct copy of a letter, dated July 26, 2007, from Stephen Sussman, Esq., to the Court is attached as Exhibit B.

4. A true and correct copy of a letter, dated July 25, 2007, from Stephen Sussman, Esq., to the Court is attached as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York this 11th day of September 2007.

　　　　　　　　　　　　　　　　　　　　　____/s/ Bruce P. Keller_____
　　　　　　　　　　　　　　　　　　　　　　　　　Bruce P. Keller

**EXHIBIT A**

**Dayton Business Journal - November 22, 2004**
http://dayton.bizjournals.com/dayton/stories/2004/11/22/daily4.html



**BUSINESS PULSE SURVEY:** Mortgage Meltdown

# Radio One takes over Reach Media ownership

Dayton Business Journal - November 22, 2004

The Dayton area's second-largest radio broadcaster, Radio One Inc., has agreed to pay $56.1 million in cash and stock to acquire the remaining ownership of Reach Media Inc., a network owned by radio personality Tom Joyner.

Washington, D.C.-based Radio One now will own 51 percent of Reach Media following the acquisition.

Reach Media was begun two years ago by Joyner, who helms the Tom Joyner Morning Show and was ranked as the No. 1 nationally syndicated radio show personality this year by the National Association of Broadcasting. Joyner's show reaches more than 8 million listeners each week and is broadcast on more than 115 U.S. radio stations.

Reach Media also oversees production of the Tom Joyner Sky Show, the Tom Joyner Family Reunion and various event-related businesses. Additionally, it operates a Web site, **blackamericaweb.com**, that targets African-American Internet users.

All are included in the purchase, according to Radio One (Nasdaq:ROIA).

"From a strategic perspective, this is probably one of the most significant acquisitions in Radio One's 25-year history. Through this transaction we have catapulted Radio One into an integrated media company targeting the urban marketplace.," said Alfred Liggins, III, Radio One president and chief executive officer, in a news release issued Monday.

The deal is expected to close in January, at which time Radio One said it will ink Joyner to a 10-year employment agreement and expand his syndicated program into Radio One markets as well.

"My dream has always been to build this company so that it provides great programs, music, events and so much more for black folks," Joyner said in a statement. "I am looking forward to doing even more of this in the future and taking our companies to the next level."

Programming from Radio One, which operates five radio stations in Dayton, primarily targets black and urban listeners. Nationwide, the company has 69 radio stations in 22 urban markets and co-ownership in TV One LLC.

| Contact the Editor | Need Assistance? | More Latest News → |

All contents of this site © American City Business Journals Inc. All rights reserved.

FindArticles > Black Enterprise > April, 2005 > Article > Print friendly

**Joyner strikes deal with Radio One: Radio One purchases Reach Media in $56 million deal**

Sakina P. Spruell

The balance of power in radio and television is shifting from the distributor to the talent, as is evident from recent syndication moves by top radio personalities. The most lucrative of deals is the one Tom Joyner struck with Radio One in November for $56 million.

Trying to compete with satellite radio and the Internet, Radio One (No. 8 on the BE INDUSTRIAL/SERVICE 100 list with $344.7 million in sales) is acquiring 51% of Reach Media, the 2-year-old parent company of the Tom Joyner Morning Show and BlackAmericaWeb.com. This deal means that Radio One becomes part owner of Reach Media, which is projected to earn $12.5 million for 2005. Joyner, who was the majority owner of Reach, will receive half of his share of the purchase price in Radio One stock.

"That's a reasonably typical price to pay," says Kit Spring, an analyst at Stifel Nicolaus who covers Radio One. "Oprah [Winfrey] makes $200 million per year, and who knows how much it would be worth if she was to sell it," explains Spring, adding that Howard Stern was just paid $100 million per year for five years to join Sirius Satellite Radio.

"Historically, distribution was the name of the game," says Scott Royster, CFO of Radio One. "But now content is more valuable than it has ever been."

The Tom Joyner Morning Show has 8 million listeners on more than 115 stations, 17 of which are owned by Radio One. In some markets, Joyner airs on a competing station. But Royster says Radio One doesn't plan to pull Joyner off every competitor station. "If it's in the best interest for Tom to be at a competitor station, then that's fine," explains Royster. For now, Radio One has a bigger strategy: to syndicate more of its on-air personalities, such as Steve Harvey, who hosts the morning drive for a Radio One station in Los Angeles.

Radio One does not have a presence in New York City, and the Tom Joyner Morning Show was recently cancelled from the morning drive at Emmis Communications' WRKS-Kiss FM in New York. "[Tom Joyner] losing New York was not an indicator that he was losing market share, and we are hopeful we can get him back in New York," says Royster. According to Ken Smikle, publisher of Target Market News, which covers trends in media and advertising, "Radio One may be able to do it because they would probably put Tom Joyner in New York for less than he would put himself in New York."

Picking up where Joyner left off and doing well in New York is Michael Baisden, relationship book author turned radio host. Baisden has been the afternoon drive host at WRKS for two years and has now signed a five-year syndication deal with Joyner's former partner ABC Radio Networks. Baisden is the author of The Maintenance Man and Men Cry in the Dark, both of which were adapted into stage plays.

One to watch for a syndication deal is Tavis Smiley, according to Smilde. "I'm sure Tavis will go into syndicated talk radio himself.... He may even go to Radio One." The Tavis Smiley Show on NPR ended in mid-December because Smiley decided not to renew his contract. He has signed on for a second season of Tavis Smiley, his late-night television show on PBS.

COPYRIGHT 2005 Earl G. Graves Publishing Co., Inc.
COPYRIGHT 2005 Gale Group

**EXHIBIT B**

# LEBENSFELD BORKER SUSSMAN & SHARON LLP

ATTORNEYS AT LAW
TWO PENN PLAZA
SUITE 1980
NEW YORK, NEW YORK 10121
(212) 594-2030

FAX NOS. (212) 594-6875
(212) 594-6346
E-MAIL LBS@lbands.com

STEPHEN SUSSMAN
Steve.Sussman@lbands.com

NEW JERSEY OFFICE
140 BROAD STREET
RED BANK, NJ 07701
(732) 530-4600

FAX NOS. (732) 530-4601
(732) 530-4334

July 26, 2007

**BY FACSIMILE: (212) 805-6191**

Hon. Barbara S. Jones
United States District Court
Southern District of New York
U.S. Courthouse
500 Pearl Street - Room 620
New York, New York 10007-1312

Re: **Samuel L. Jones Jr. v. Infinity Broadcasting Corporation of Washington, D. C. n/k/a CBS Radio Inc. of Washington, D.C.**
**07 CIV. 5693 (BSJ/AJP)**

Dear Judge Jones:

When we received (at 4:30 p.m. yesterday) the suggested modification by CBS Radio to Your Honor's proposed revision to the Order of Preliminary Injunction -- one that would add the amorphous concept of "indirect" to a decretal provision that, most respectfully, did not comport with the specificity required by Fed. R. Civ. P. 65(d) --, we, like CBS Radio, felt "compelled to respond." Unlike CBS Radio, however, we did not read Your Honor's Order of yesterday morning as **implicitly** authorizing the commencement of an epistolary dialogue. We, therefore, urge Your Honor to reject CBS Radio's unauthorized (post 5 p.m.) submissions. Nonetheless, **if** Your Honor elects to accept such unauthorized submissions, we assume you will allow us, on behalf of Mr. Jones, to submit this rejoinder.

Rather than address the three bases for Mr. Jones' proposed clarification, CBS Radio (1) ignores the specificity required by Fed. R. Civ. P. 65(d), (2) suggests (in the second and third paragraphs on page 2 of the Keller letter, that Mr. Jones be considered the draftsman or co-draftsman of the License Agreement [!], and (3) attempts to justify its implicit admission that the restraints go beyond those set forth in the parties' License Agreement by asserting that such additional prohibitions are necessary "to preclude that type of gamesmanship." Keller letter, page 2, third paragraph.

**LEBENSFELD BORKER SUSSMAN & SHARON LLP**
ATTORNEYS-AT-LAW

Hon. Barbara S. Jones
United States District Court
Southern District of New York
July 26, 2007
page 2

   Contrary to CBS Radio's contention, our letter to Your Honor was in response to Your Honor's directive in your Order dated July 25, 2007, nothing more. To characterize our response as a "motion for reconsideration" is, to use CBS Radio's term (Keller letter, page 2), nothing more than an attempt by CBS Radio to use "gamesmanship" to obtain substantially more relief than is justified by the record before the Court. The License Agreement was in evidence, and the Court heard testimony concerning the draftsman of such document. The suggested clarifications by Mr. Jones are amply supported by the record and by Fed. R. Civ. P. 65(d).

   Reference to the Complaint, Amended Complaint and plaintiff's opposition papers (Keller letter, page 1, second paragraph) is a strawman. All of these documents were written **prior** to the receipt of CBS Radio's moving papers, and only CBS Radio was given the opportunity to submit reply papers. Although the language in Your Honor's original Order was dictated into the record at about 5:50 p.m. on July 23 -- and certain of the language was, in fact, repeated --, the presentation of full objections to the scope thereof promptly after review of the written Order nullifies any valid assertion that Mr. Jones waived his right to seek clarification and/or modification of the Order. That is especially so where such clarification and modification is based solely upon facts in the record, the Federal Rules of Civil Procedure and settled rules of law.

   Your Honor ruled that the post-termination extension of the License Agreement was in effect. Whether that ruling is hereafter modified or affirmed by the Court (or upon appellate review) is not at issue at this time. What is at issue is whether the preliminary restraints directed by Your Honor (1) should be set forth with the specificity required by Fed. R. Civ. P. 65(d), and (2) clarified to comport with the restraints set forth in the License Agreement drafted by CBS Radio.

   We should also note that the repeated and erroneous characterization by CBS Radio to our prior (timely) submission as being made on behalf of Mr. Jones "and <u>Radio One</u>" (Keller letter, <u>passim</u>) can only be an intentional distortion of the record. As was made clear in out submission (and on the record) we appear for, and write only on behalf of, Mr. Jones. It should be apparent that the consequence of Your Honor's ruling on the existence of post-termination restraints compromises Mr. Jones to perform under his

## LEBENSFELD BORKER SUSSMAN & SHARON LLP
ATTORNEYS-AT-LAW

Hon. Barbara S. Jones
United States District Court
Southern District of New York
July 26, 2007
page 3

contract with Radio One.[1] The continuation of restraints broader than those set forth in the CBS Radio License Agreement cannot be justified on the basis of any authority presented to the Court by CBS Radio. Indeed, if such a proposition has, in fact, been presented by CBS Radio, we are reasonably confident that the unauthorized 5:00 p.m. submissions initiated solely by CBS Radio will continue.

Thank you for your consideration.

Respectfully,

Stephen Sussman

SS:bh

cc:     Bruce B. Keller, Esq. (by fax)

---

[1] We do not quarrel with the proposition that the July 24th appearance by Mr. Jones on the Joyner Show as the "Celebrity Snitch formerly known as HUGGY LOWDOWN" was ill-conceived. Regardless of the reason therefore -- it was the apparent result of miscommunication --, it should not have occurred. Such action has not been repeated, and CBS Radio does not assert otherwise. Whatever may be the consequence of such occurrence, there can be no valid argument that such one-time happening constitutes a basis for an extension of the restraints beyond those which were "bargained for" in the License Agreement. The hyperbole presented by CBS Radio in such regard does not substitute for legal authority.

**EXHIBIT C**

# LEBENSFELD BORKER SUSSMAN & SHARON LLP

ATTORNEYS AT LAW
TWO PENN PLAZA
SUITE 1980
NEW YORK, NEW YORK 10121
(212) 594-2030

FAX NOS. (212) 594-6875
(212) 594-6346
E-MAIL LBS@lbands.com

STEPHEN SUSSMAN
Steve.Sussman@lbands.com

NEW JERSEY OFFICE
140 BROAD STREET
RED BANK, NJ 07701
(732) 530-4600

FAX NOS. (732) 530-4601
(732) 530-4334

July 25, 2007

**BY FACSIMILE: (212) 805-6191**

Chambers of Hon. Barbara S. Jones
United States District Court
Southern District of New York
U.S. Courthouse
500 Pearl Street - Room 620
New York, New York 10007-1312

Re: **Samuel L. Jones Jr. v. Infinity Broadcasting Corporation of Washington, D. C. n/k/a CBS Radio Inc. of Washington, D.C.**
**07 CIV. 5693 (BSJ/AJP)**

Dear Judge Jones:

   We represent Samuel L. Jones Jr., plaintiff in the above-captioned action. In accordance with Your Honor's directive, set forth in your Order dated July 25, 2007, we transmit herewith proposed language for an Amended Preliminary Injunction. Our proposed language is guided by three principles of law.

   First, Fed. R. Civ. P. 65(d) provides, in relevant part, that an "order granting an injunction . . . shall describe in reasonable detail . . . the act or acts sought to be restrained." Second, the restraints should not be broader than those for which the parties bargained.[*] Third, "[i]n cases of ambiguity, a contract is construed most strongly against the party who prepared it, and favorably to a party who has no voice in the

---

[*] Cf. Earchweb, Inc. v. Schlack, 71 F. Supp.2d 299, 311 (S.D.N.Y. 1999) remanded, 205 F.3d 1322 (2d Cir. 2000), aff'd, 2000 WL 1093320 (2d Cir. 2000) (court declined "to re-write the parties' employment agreement . . . to broaden the sweep of the restrictive covenant").

**LEBENSFELD BORKER SUSSMAN & SHARON LLP**
ATTORNEYS-AT-LAW

Hon. Barbara S. Jones
United States District Court
Southern District of New York
July 25, 2007
page 2

selection of language." <u>Jacobson v. Sassower</u>, 66 N.Y.2d 991, 993, 489 N.E. 2d 1283, 1284 (NY, 1985).

   Here, the record is unequivocal. The restraints derive from the License Agreement, which was drafted solely by CBS Radio without input from Jones. Paragraphs 1 and 2 of the License Agreement read in full as follows:

1. Grant. *Licensor hereby grants to Licensee upon the terms and conditions of this agreement an exclusive royalty-free license to use the Trademark, on and in connection with radio programs* (including internet transmissions of the WPCG-FM signal) *on WPGC-FM as defined in paragraph 2 below* and on any other broadcast radio station where the Licensee supplies its WPGC-FM radio station programming (a "WPGC Affiliate) *in the Washington D.C. Total Survey Area as defined by Arbitron* and in the Arbitron Total Survey Area covering any WPGC Affiliate.

2. Permitted Uses. *Licensor agrees that Licensor will not use the Trademark on any other broadcast radio station in the Washington, DC Total Survey Area at any time that the "Donnie Simpson Show" is broadcast on WPGC-FM.* Licensor agrees not to use Trademark in any manner that will conflict with Licensee's exclusive rights of use as defined in paragraph 1.

Italics added.

   Attached hereto is a proposed modification to Your Honor's Order of Preliminary Injunction that applies the foregoing principles.

   Thank you for your consideration.

                Respectfully,

                Stephen Sussman

SS:bh
cc:   Bruce B. Keller, Esq. (by fax)

PLAINTIFF'S PROPOSED
MODIFICATION TO DECRETAL
PARAGRAPHS OF ORDER
<u>OF PRELIMINARY INJUNCTION</u>

It is hereby ORDERED that:

1. Pursuant to Federal Rule of Civil Procedure 65(b), Jones and Radio One, and all those acting in concert or participation with them, are preliminary enjoined, until May 26, 2008, from using the HUGGY LOWDOWN mark on any radio broadcast transmitted within the Washington, D.C. Total Survey Area, as defined by the Arbitron ratings service, during such time (currently 6:00 a.m. - 10:00 a.m., Eastern Time) that the "Donnie Simpson Show" is broadcast on WPGC-FM.

2. Nothing in the foregoing decretal paragraph is intended to enjoin Jones and Radio One, and those acting in concert or participation with them, from (i) using the HUGGY LOWDOWN mark in broadcasts that are not transmitted to the Washington, D.C. Total Survey Area, (ii) the use of such mark in connection with live performances by Jones in clubs and other venues, including within the Washington, D.C. Total Survey Area, and (iii) the promotion of the HUGGY LOWDOWN mark in connection with live performances by Jones.

July 25, 2007