UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------------------x  
SAMUEL L. JONES JR.,                                              :  

      Plaintiff,                                                        :   No. 07 Civ. 5693 (BSJ) (AJP)  

  -against-                                                              :   **REPLY MEMORANDUM IN FURTHER SUPPORT OF CBS RADIO'S MOTION FOR A FINDING OF CONTEMPT**  

INFINITY BROADCASTING CORPORATION OF       :  
WASHINGTON, D.C. n/k/a CBS RADIO INC. OF  
WASHINGTON, D.C.,                                                 :  

      Defendant.  
                                                 :  
------------------------------------------------------------------------x  
INFINITY BROADCASTING CORPORATION OF       :  
WASHINGTON, D.C. n/k/a CBS RADIO INC. OF  
WASHINGTON, D.C.,                                                 :  

      Counterclaimant and Third-Party Plaintiff,  :  

  -against-                                                              :  

SAMUEL L. JONES JR.,                                              :  

      Counterclaim Defendant, and                  :  

RADIO ONE, INC.,                                                    :  

      Third-Party Defendant.                              :  
------------------------------------------------------------------------x  

                                      DEBEVOISE & PLIMPTON LLP  
                                      919 Third Avenue  
                                      New York, New York 10022  
                                      (212) 909-6000  

                                      *Attorneys for Defendant, Counterclaimant,*  
                                      *and Third-Party Plaintiff Infinity*  
                                      *Broadcasting Corporation of Washington,*  
                                      *D.C. n/k/a CBS Radio Inc. of Washington,*  
                                      *D.C.*

ELECTRONICALLY FILED

**Table of Contents**

Table of Authorities ................................................................................................... ii

Preliminary Statement ................................................................................................ 1

A.     Radio One's Claim That It Cannot Control What Airs on the Tom Joyner Morning Show Is Demonstrably False. ............................................................. 2

B.     Radio One Was in the Courtroom When the Injunction Issued ............................. 4

C.     The Injunction Issued from the Bench Was Effective Immediately. ...................... 6

D.     Radio One Had Ample Notice of CBS Radio's Position. ........................................ 6

E.     The Violations in Addition to "HUGGY" Require No Interpretation of the Order and Are Not Excusable As "Mistakes." ......................................................... 7

Conclusion ................................................................................................................ 10

**Table of Contents**

Table of Authorities ................................................................................................... ii

Preliminary Statement ................................................................................................ 1

A.     Radio One's Claim That It Cannot Control What Airs on the Tom Joyner Morning Show Is Demonstrably False. ............................................................. 2

B.     Radio One Was in the Courtroom When the Injunction Issued ............................. 4

C.     The Injunction Issued from the Bench Was Effective Immediately. ...................... 6

D.     Radio One Had Ample Notice of CBS Radio's Position. ........................................ 6

E.     The Violations in Addition to "HUGGY" Require No Interpretation of the Order and Are Not Excusable As "Mistakes." ......................................................... 7

Conclusion ................................................................................................................ 10

## Table of Authorities

### FEDERAL CASES

*Aqua Grill, Inc. v. S.T.F.B. Corp.*,
   No. 96 Civ. 4780 (KMW), 1997 WL 563305 (S.D.N.Y. Sept. 8, 1997) .....................5, 6

*Aspira of New York, Inc. v. Board of Education of New York*,
   423 F. Supp. 647 (S.D.N.Y. 1976) ..................................................................................2

*Baker v. Master Printers Union*,
   34 F. Supp. 808 (D.N.J. 1940) ........................................................................................8

*Barcia v. Sitkin*,
   Nos. 79 Civ. 5831, 5899 (RLC), 1997 WL 66785 (S.D.N.Y. Feb. 14, 1997) .................5

*Cohn v. Kramer*,
   136 F.2d 293 (6th Cir. 1943) ...........................................................................................7

*In re: Complaints Against Various Television Licensees Concerning Their Feb. 1,
   2004 Broadcast of the Super Bowl XXXVIII Halftime Show*,
   21 F.C.C.R. 2760 (Mar. 15, 2006) ..................................................................................3

*Huber v. Marine Midland Bank*,
   51 F.3d 5 (2d Cir. 1995) ..................................................................................................7

*Independent Living Aids, Inc. v. Maxi-Aids, Inc.*,
   349 F. Supp. 2d 509 (E.D.N.Y. 2004) ............................................................................8

*National Basketball Association v. Design Management Consultants, Inc.*,
   289 F. Supp. 2d 373 (S.D.N.Y. 2003) .............................................................................5

*Paramedics Electromedicina Comercial, Ltda. v. GE Medical System Information
   Technologies Inc.*, 369 F.3d 645 (2d Cir. 2004) .......................................................8, 10

### OTHER

4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition
   § 23:20 (2007) .................................................................................................................8

Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D.C. ("CBS Radio") respectfully submits this reply memorandum in further support of its motion for a finding of contempt against Samuel L. Jones Jr. and Radio One Inc. ("Radio One").

**Preliminary Statement**

Jones and Radio One have offered a litany of insufficient excuses in an attempt to avoid the consequences of their contumacious conduct:

>   (1) Neither should be held responsible for what airs on the Tom Joyner Morning Show (Contempt Opp. 2, 6, Sept. 7, 2007);
>
>   (2) Radio One's expectation that the Court would not issue the requested preliminary injunction interfered with its ability to comply after it was issued (*Id.* at 2);
>
>   (3) Because the July 23 injunction was not set forth in writing until early the next morning, referring to Jones as "the Celebrity Snitch formerly known as HUGGY LOWDOWN" on July 24 did not, in Radio One's view, violate the Court's directive (*Id.*);
>
>   (4) CBS Radio did not complain enough to Radio One about the violations before finally moving for a finding of contempt (*Id.* at 4); and
>
>   (5) "[V]irtually" all of the violations require an interpretation of the injunction (*Id.* at 8) and it is simply "too much" for the Court to expect full compliance with its order in any event (Williams Decl. ¶ 15, Sept. 7, 2007).

Some of these excuses are factually inaccurate, others ignore the applicable legal standard and some fail for both reasons. At a minimum, each excuse pushes the margins of good faith because the cumulative record since July 23 shows that Jones and Radio

- 2 -

One -- especially Radio One -- have repeatedly feigned compliance with the Court's Order while trying to find ways to exploit the goodwill inherent in the HUGGY LOWDOWN mark for their own benefit.

### A. Radio One's Claim That It Cannot Control What Airs on the Tom Joyner Morning Show Is Demonstrably False.

Radio One continues to be less than candid with the Court when it attempts to avoid responsibility for the repeated violations that have occurred by suggesting it simply cannot control what goes out over its airwaves. Williams Decl. ¶14. There are three reasons why that suggestion is just not true and should be emphatically rejected.

*First*, Radio One owns and controls Reach Media, Inc. ("Reach"), the direct owner of the Tom Joyner show. *See* Vilardo Decl. ¶ 5, Sept. 7, 2007. That, in and of itself, would be a sufficient basis for holding Radio One responsible. *See Aspira of New York, Inc. v. Bd. of Educ. of New York*, 423 F. Supp. 647, 654 (S.D.N.Y. 1976) (defendants fell "far short of the requisite diligence" when they "neglected to marshal their own resources, assert their . . . authority, and demand . . . results . . . from subordinate persons").

Moreover, Reach itself is hardly a disinterested, arms-length third party to this case. Nowhere does Radio One explain that Reach is the owner of the Tom Joyner show because Reach was started and wholly-owned by Tom Joyner himself, prior to his selling his majority stake to Radio One. *See* Keller Reply Decl. Ex. A, Sept. 11, 2007. For the purposes of this case, Radio One, Reach and Tom Joyner are one and the same and Radio One's hair-splitting distinctions are, at best, disingenuous.

- 3 -

*Second*, Radio One already has demonstrated its complete control over content airing on the Tom Joyner show. This entire dispute started when Radio One (not Reach) decided to hire Jones to appear on the Tom Joyner show.  Radio One's employment agreement with Jones specifies (a) that Radio One will feature Jones as on-air talent on the Tom Joyner program, (b) how often Jones will appear on that program and (c) how long each appearance on that program should be.  *See* July 23 Tr. 17-18, Ex. 4.  *See also* July 23 Tr. 55 (Radio One wanted to hire Jones and put him on the air as HUGGY LOWDOWN).  Despite the self-serving assertion that there are "lots of layers" between the business side and the studio, the Radio One executive who signed the contract putting Jones on the Joyner show is Linda Vilardo, *id.* at 54-55, the author of that statement.  *See* Vilardo Decl. Ex. A.

*Third*, the suggestion that the "bombastic atmosphere" of live radio somehow excuses Radio One's non-compliance and that Radio One should not be "pilloried for merely carrying the program on its airwaves" (Williams Decl. ¶ 14) is not to be taken seriously.  Radio One, not Reach, is the owner of the FCC license for Washington, D.C. radio station WMMJ-FM.  *See* Vilardo Decl. ¶ 3.  As a matter of law, this means Radio One, not Reach, is *solely* responsible for everything that goes out over the WMMJ-FM airwaves. *See In re: Complaints Against Various Television Licensees Concerning Their Feb. 1, 2004 Broadcast of the Super Bowl XXXVIII Halftime Show*, 21 F.C.C.R. 2760, 2768 & n.54 (Mar. 15, 2006) ("well-established principles of broadcast regulation" make FCC licensees responsible for the selection and presentation of program material, *including acts or omissions of their employees*) (emphasis added).  Just as Radio One

did not accurately explain that the Tom Joyner show airs in New York state, whatever the geographic reach of the WMMJ-FM signal, it has not accurately described its authority and control over the content of that program.

### B.   Radio One Was in the Courtroom When the Injunction Issued.

Radio One suggests that because it did not "expect[ ]" the Court to issue an injunction, its violations should somehow be excused. Williams Decl. ¶ 6; Contempt Opp. 2. There are three short answers to this. *First*, Ms. Vilardo, Radio One's former General Counsel and, by her own description the business executive best positioned to receive notice of the injunction and share it with her colleagues, July 23 Tr. 54-60, was in the courtroom when (a) this Court issued its injunction and (b) Radio One's counsel was asked whether there was any "ambiguity" or additional language to be added in order to make clear what was meant by the Court's direction that "the Huggy Lowdown Mark" should not be "us[ed]" "in any way." July 23 Tr. 87-88.

*Second*, whatever Radio One might have "expected" on the evening of July 23, its counsel already has admitted, in his July 26 letter to the Court, Keller Reply Decl. Ex. B, p.3, n.1, that the gimmick of using the HUGGY LOWDOWN mark as part of the phrase "formerly known as" on the morning of July 24 "should not have occurred." Moreover, as the Court will recall, that violation occurred not just in the morning, but again on the afternoon of July 24, when the Tom Joyner show was made available on Radio One's website. July 24 Tr. 2-5. In fact, the selective emails Radio One submits to support its opposition indicate that Radio One planned to continue to call Jones "Huggy" in that manner all that week. Williams Decl. ¶ 8 Ex. B.

- 5 -

This is the opposite of a diligent attempt to comply with the plain language of this Court's order. *See Aqua Grill, Inc. v. S.T.F.B. Corp.*, No. 96 Civ. 4780 (KMW), 1997 WL 563305, at *5 (S.D.N.Y. Sept. 8, 1997) (holding defendant in contempt for use of trademark "Aqua Grill" in various ways for three days after injunction issued). It demonstrates that the July 24 violation was not a result of dashed expectations, but indifference to the Court's ruling.

***Third***, whatever Radio One "expected" on July 23, the record after that date consists of (a) an extensive exchange of correspondence about the scope of the injunction, (b) a conference with the Court on July 24, (c) briefing on the motion to modify or vacate the injunction, and (d) a conference with the Court on that motion on August 14 (during which the Court indicated it was "disturbed and concerned" by assertions that there was not enough "guidance" as to what the injunction covered, Aug. 14 Tr. 15). Radio One and Jones cannot use their pre-hearing expectations to defend any of the subsequent violations. "In this circuit, compliance must be beyond the realm of possibility . . . before a party will be exonerated in a contempt proceeding." *Barcia v. Sitkin*, Nos. 79 Civ. 5831, 5899 (RLC), 1997 WL 66785, at *2 (S.D.N.Y. Feb. 14, 1997). That violations continued to occur almost a full month after this Court first ruled, proves only that neither Jones nor Radio One attempted to comply with any degree of vigor or urgency. That supports a finding of contempt. *See Nat'l Basketball Assoc. v. Design Mgmt. Consultants, Inc.*, 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003).

### C.     The Injunction Issued from the Bench Was Effective Immediately.

In addition to its dashed expectations, Radio One contends that "[n]ot having seen the written" order, it thought it could continue "limited use" of the words HUGGY LOWDOWN.  Contempt Opp. 2.  Given the undisputed fact that Radio One was on notice at the moment the injunction issued that the injunction was effective immediately, July 23 Tr. 92, this argument perhaps best exposes the complete insincerity and invalidity of all of Radio One's excuses.  *See Aqua Grill*, 1997 WL 563305, at *4 (characterizing defendant's "misunderstanding" as "incredible in view of the plain language" of the court's order).

### D.     Radio One Had Ample Notice of CBS Radio's Position.

Radio One cannot avoid contempt sanctions by turning CBS Radio's forbearance against it.  Even though CBS Radio could have moved for contempt on July 24, *see* July 24 Tr. 9, and on August 8, Vilardo Decl. ¶ 7 Ex. A, it still refrained, largely as a courtesy to Ms. Vilardo.  *Id*.  The notion that it is somehow CBS Radio's fault for not complaining to Radio One about each and every one of the "incidents subsequent to August 8," Contempt Opp. 4, is not well taken.  By August 8 there had been at least two violations, two conferences on the scope of the order and pages of letters and briefing reflecting CBS Radio's position.  Radio One and Jones knew they were at risk of a contempt motion if, in CBS Radio's view, they continued "nibbling around the edges to see how much they could get away with." July 24 Tr. 4.  Nonetheless, Radio One and Jones assumed that risk.

It is not CBS Radio's burden to police compliance with the order by Radio One and Jones: It is their burden to obey the injunction in the first instance or else "plainly and unmistakably" prove "that compliance is *impossible*." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (emphasis in original).

### E. The Violations in Addition to "HUGGY" Require No Interpretation of the Order and Are Not Excusable As "Mistakes."

Quoting a 1943 Sixth Circuit opinion, Radio One argues that none of the many unmistakable references to Huggy Lowdown that have taken place since July 23, other than perhaps express recitations of "Huggy" or "Lowdown", are covered by the injunction. *See* Contempt Opp. 8. The very language they cite, however, makes clear that every injunction is to be "read in light of the issues and the purpose for which the suit was brought." *Cohn v. Kramer*, 136 F.2d 293, 295-96 (6th Cir. 1943).

Having brought this lawsuit, Radio One and Jones are well aware that it involves Jones' promise to CBS Radio that he would not

> use the Trademark **in any manner** that will conflict with the [CBS Radio]'s exclusive rights of use as defined in paragraph 1 [of the License Agreement].

July 23 Tr. 14-15, Ex. 2 (emphasis added). They are also aware that the injunction issued for the express purpose of protecting that contractual right: When it has suited their purpose, they repeatedly have argued to the Court that the restraints imposed have to be coextensive with those "bargained for" in the License Agreement. Keller Reply Decl. Ex. B, p.3, n.1; Keller Reply Decl. Ex. C, p.1 (the restraints should be the same as "those for which the parties bargained").

Those admissions -- that the injunction was issued to protect contractual exclusivity of all manners of use of HUGGY LOWDOWN -- alone would be enough to hold Radio One and Jones in contempt for their post-July 23 conduct. Here, however, Radio One (and Reach) actually have admitted that "Hug Shack," "Hugster," or even "HU---," are "derivations" of the enjoined mark. Williams Decl. ¶ 12, Ex. E. By definition, recognizable "derivations" of a trademark just as readily usurp the goodwill of the mark as the mark itself. *See* 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 23:20 (2007) (quoting *Baker v. Master Printers Union*, 34 F. Supp. 808, 811 (D.N.J. 1940) ("[T]he most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts.")). That would be so even if Jones and Radio One had not begun their pattern of non-compliance with the phrase "formerly known as Huggy Lowdown" and continued to use "formerly known as" to this day.

That is clear and convincing proof of non-compliance. *See Paramedics Electromedicina Comercial, Ltda. v. GE Medical Sys. Info. Tech. Inc.*, 369 F.3d 645, 656 (2d Cir. 2004) ("The clear and convincing proof is that Tecnimed did not comply."). It is not excused by the suggestion that the injunction requires interpretation or expansion to prohibit such conduct. A clear and unambiguous order is one that is specific and definite enough to apprise those within its scope of the conduct that is being proscribed. *See Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F. Supp. 2d 509, 515 (E.D.N.Y. 2004). Here, Radio One and Jones knew, at the close of the preliminary injunction hearing, that they were enjoined from using the "Huggy Lowdown mark in any way."

July 23 Tr. 87.  Their counsel expressly represented to this Court, on July 24, that "Radio One . . . will not use -- will not make reference to the words -- to the phrase Huggy Lowdown in any way . . . ," July 24 Tr. 7, until further clarification from the Court about possible permissible uses.  July 24 Tr. 10.  In response, the Court warned:

> OK.  If you want, as I gather you do, specific further clarification, I expect to see it in writing and I would highly recommend that rather than take a chance . . . you write first unless you're absolutely clear that it does not represent the use of the Huggy Lowdown mark in any way . . . OK?  So I am going to get papers from you, is that right, Mr. Sussman?
>
> Mr. Sussman:  Yes, Your Honor.

July 24 Tr. 11.

At no point did Radio One or Jones request any clarification as to whether "derivations" of Huggy Lowdown, such as "Huggy" "Hug Shack", "Hugster", "HU---" was a use "in any way."  The only "clarification" they sought consisted instead of an attempt to (1) limit the injunction to Monday through Friday, 6 a.m. to 10 a.m. and (2) to include an express carve-out for personal appearances.  *See* Keller Reply Decl. Ex. C.

After those requested modifications were denied, with complete disregard for the Court's admonition that chances not be taken, Radio One and Jones continued to employ other ways to communicate the very mark they were clearly and unambiguously enjoined from using.  That is not "implied contempt," Contempt Opp. 8, a term CBS Radio did not, in fact, use in its motion.  Instead, it is express and the defense offered in the Williams declaration, that it is simply "too much" for the Court to expect Radio One and Jones to fully comply by refraining from such references, Williams Decl. ¶ 15, properly

has been rejected in the past. *Paramedics*, 369 F.3d at 656 (refusing to accept defense "that the court should have been satisfied with steps that were short of compliance" and warning that compliance is required until an order "is modified or reversed"). It should be equally rejected here.

## Conclusion

For the reasons set forth above, CBS Radio respectfully requests that the Court grant its motion for a finding of contempt and sanction Jones and Radio One accordingly.

Dated: New York, New York
September 11, 2007

DEBEVOISE & PLIMPTON LLP

By: ___/s/ Bruce P. Keller_____
Bruce P. Keller
Jeremy Feigelson

919 Third Avenue
New York, NY 10022
Tel.: (212) 909-6000
Fax.: (212) 909-6836

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Infinity Broadcasting Corporation of Washington, D.C. n/k/a CBS Radio Inc. of Washington, D.C.*